[No. A055344. First Dist., Div. Five. Sept. 28, 1992.]

GERHARD STOLL, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
S-K-I, LTD., Real Party in Interest.

### COUNSEL

Long & Levit, Ronald E. Mallen, Barry D. Brown and Barbara W. Engler for Petitioner.

No appearance for Respondent.

Berger & Norton, Jacqueline A. Axtell and Michael M. Berger for Real Party in Interest.

### OPINION

**KING, J.**—In this case, we hold that the statute of limitations within which a client must commence an action against an attorney on a claim for legal malpractice or breach of a fiduciary duty is identical. Unless tolled, a claim

based on either theory falls within the statutory term "wrongful act or omission" and must be commenced within one year after the client discovers, or with reasonable diligence should have discovered, the facts constituting the act or omission, or four years from the date of the act or omission, whichever occurs first.

Petitioner, an attorney, is defendant in an action for breach of fiduciary duty brought by real party in interest, a former client. Petitioner demurred to the complaint on the ground that the pleading actually sounded in legal malpractice, and was therefore time barred under the one-year malpractice statute of limitations. (Code Civ. Proc., § 340.6.)[1] In the alternative, petitioner argued that the complaint sounded in constructive fraud and was still time barred under the three-year limitations period for that tort. (§ 338, subd. (b).) The trial court overruled the demurrer, concluding that the complaint for breach of fiduciary duty was governed by the "catch-all" limitations period of four years. (§ 343.) Petitioner sought review by extraordinary writ. We summarily denied the petition, but the Supreme Court granted review and retransferred the matter with directions to issue the alternative writ. Having complied and heard oral argument, we are persuaded that petitioner is entitled to relief.

I

FACTS

The following material facts alleged in real party's complaint were admitted by petitioner's demurrer solely and provisionally for the purpose of testing the question of law raised by the demurrer. (*McHugh* v. *Howard* (1958) 165 Cal.App.2d 169 [331 P.2d 674]; see *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

Real party is a corporation headquartered in Vermont which owns and operates ski resorts. Since 1988 it has done business in California through its wholly owned subsidiary, Bear Mountain, Ltd., which operates Bear Mountain ski resort in Big Bear Lake. This suit arises from the story of real party's acquisition of the Bear Mountain resort.

Sometime prior to January 1, 1986, real party decided to expand its east coast ski operations into other venues, particularly a large western state. In 1985 and through February 1986, petitioner was executive vice-president and general counsel of Lift Engineering and Manufacturing Company (Lift) of Carson City, Nevada, a manufacturer of ski lifts. During his employment

---

[1]All statutory references are to the Code of Civil Procedure.

with Lift, petitioner contacted Preston Smith, real party's president, to discuss the legal issues relevant to real party's potential acquisition of an interest in a northern California ski area. Petitioner led Smith to believe he was an in-house attorney working for Lift.

On February 7, 1986, petitioner wrote Smith seeking employment with real party. On April 6, Smith retained petitioner because of his legal experience in the ski industry and his knowledge of unique legal issues related to water and land use regulation in the western United States, issues of concern to an eastern company seeking to acquire a western ski operation. Petitioner was retained to help real party locate suitable ski areas for acquisition in the West, to analyze the areas' financial strengths and fair market values, to analyze legal issues such as land use regulation pertinent to ski area acquisition, and to negotiate the acquisitions themselves.

Immediately after he was retained by real party, petitioner began to encourage his new client to acquire Goldmine Ski Associates, Inc. (Associates), then the owner of "Goldmine," the predecessor to the Bear Mountain resort. Petitioner, however, failed to disclose to real party an adverse pecuniary interest, i.e., that he had already entered into a finder's fee agreement with Associates under which petitioner could claim a fee if the Goldmine resort was sold.

Negotiations for real party's purchase of Goldmine continued through the fall of 1987. Petitioner continued to conceal his claim to a finder's fee from the transaction. He was terminated by real party in July 1987 for undisclosed reasons, after receiving a total of $100,000 in salary and expenses.

In September 1987, when the acquisition of Goldmine looked probable, petitioner telephoned the president of Associates, Joseph Shuff, to inform him he was entitled to a finder's fee. Shuff relayed the information to Smith but denied having a previous finder's fee agreement with petitioner.

On New Year's Eve, 1987, real party acquired the Goldmine resort by merging Associates with an S-K-I subsidiary. Petitioner obtained his finder's fee through litigation against Associates and Shuff, which came to judgment in January 1991.

Real party's present complaint was filed June 28, 1991. In addition to the facts just discussed, the complaint alleges that petitioner, as attorney for real party, breached his fiduciary duty by: (1) acquiring a pecuniary interest adverse to a client without written consent, in violation of California Rules of Professional Conduct, rule 3-300; (2) having an undisclosed relationship

with another party interested in the subject matter of his client's representation, in violation of California Rules of Professional Conduct, rule 3-310(A); (3) failing to disclose in writing the conflicting interests of petitioner in Goldmine and his employment by real party, in violation of California Rules of Professional Conduct, rule 3-310(B); and (4) charging an "unconscionable fee" (his $100,000 salary) while at the same time expecting a lucrative finder's fee from the adverse party to his client.

Petitioner demurred to the complaint, raising the statute of limitations issue. Petitioner argued that real party knew of facts constituting the cause of action in September 1987, when real party learned of the finder's fee agreement. Petitioner contended that the only applicable statutes of limitations were the one year for legal malpractice or the three years for constructive fraud, either of which time barred the lawsuit. Real party responded that "breach of fiduciary duty" was a separate cause of action which was not specified in any statutory limitations period, thus falling under the four-year catchall of section 343. The trial court agreed based on the holding of *David Welch Co.* v. *Erskine & Tulley* (1988) 203 Cal.App.3d 884 [250 Cal.Rptr. 339] and, since the complaint is not time barred under a four-year limitations period, overruled the demurrer. This petition followed.

## II

### DISCUSSION

■ Petitioner contends that the Legislature has decreed a one-year statute of limitations for *all* legal malpractice save actual fraud. He further contends that although styled as a breach of fiduciary duty, the misconduct alleged in this case is nothing more than professional malpractice subject to the one-year statute. Thus, argues petitioner, the trial court's reliance on section 343 is contrary to legislative intent and in effect extends the malpractice statute of limitations an extra three years. We agree.

In 1977, the Legislature enacted section 340.6, which provides in pertinent part that: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission. . . ." The legislative history of the statute indicates that the Legislature intended to establish a statute of limitations for any legal malpractice falling short of actual fraud.

In *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417 [173 Cal.Rptr. 917], disapproved on other, unrelated

grounds, *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691], the court was faced with the issue whether the statute's reference to "wrongful act or omission" was restricted to malpractice claims grounded in tort. The plaintiffs in that case contended that only legal malpractice claims grounded in tort were governed by the one-year limitations period, and those grounded in contract enjoyed the four-year period for contract actions generally. (§ 337, subd. 1.)

Noting that the Legislature had not expressly declared its intent to establish a comprehensive one-year limitations period, and that there was some ambiguity to the phrase "wrongful act or omission," the *Southland* court turned to section 340.6's legislative history. (119 Cal.App.3d at pp. 426-427.) "From the time the statute was introduced in the Assembly to its ultimate signing by the Governor, every legislative analysis on section 340.6 . . . began with a review of existing statutes of limitation applicable to legal malpractice actions, including section 337, subdivision (1) for actions based on a written contract." (*Id.* at p. 427, fn. omitted.) Before section 340.6 was enacted, the statute of limitations for legal malpractice varied upon the plaintiff's choice of theory of liability: tort or breach of oral contract invoked a two-year statute, while breach of a written contract invoked a period of four years. (119 Cal.App.3d at p. 427, fn. 4.) Each legislative analysis "concluded with a discussion concerning the manner in which enactment of section 340.6 would change existing law" by requiring commencement of legal malpractice actions with one year. (*Id.* at p. 427.)

*Southland* found it of "some significance" that the Bill Digest of the Assembly Committee on the Judiciary indicated that the committee members had reviewed and considered a leading article on statutes of limitations for legal malpractice: Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 State Bar Journal 22. The article opined that California attorneys were subject to "literally indeterminate liability" due to the adoption of the "discovery rule" by which malpractice limitations period are triggered by the client's discovery of the wrongdoing, not its date of occurrence. (52 State Bar J. *supra*, at p. 24; see *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) The article argued there was a need for "a specially tailored statute of limitations for legal malpractice" as a solution to the crisis of the "enormous increase of insurance premiums . . . accompanied by a dramatic decline in the number of companies willing to insure attorneys." (52 State Bar J., *supra*, at p. 22.) Mallen drew a parallel to the crisis in medical malpractice insurance, to which the Legislature responded in 1975 with urgency legislation to provide for a specially tailored limitations period for medical malpractice. (*Id.* at p. 22, fn. 3; § 340.5.)

The article proposed a legal malpractice statute very similar to section 340.6 in its present form. The proposed statute provided that "An action against an attorney for a wrongful act or omission, other than for actual fraud or breach of a written contract, arising in the performance of professional services shall be commenced within two years" of discovery. (52 State Bar J., *supra*, at p. 24.)

Significantly, the article concluded with a discussion of the precise definition of legal malpractice, which Mallen recommended "is best stated in terms of the actual wrong: a wrongful act or omission occurring in the rendition of professional services." (52 State Bar J., *supra*, at p. 77.) In his view, the proposed statute thus excluded wrongs committed when the defendant was not acting as an attorney, a breach of a written promise, or "actual fraud, as distinguished from constructive fraud." (*Ibid.*) In a footnote Mallen explained that the statute should specify *actual* fraud because "constructive fraud may arise from a fiduciary breach regardless of the attorney's intent or motive." (*Id.* at p. 77, fn. 43.)

As noted in *Southland*, section 340.6 "as eventually enacted retains much of the wording [of] Mallen's proposed statute." (*Southland Mechanical Constructors Corp.* v. *Nixen, supra*, 119 Cal.App.3d at p. 428.) The Legislature did alter Mallen's language by changing "a wrongful act or omission, other than for actual fraud or breach of a written contract" to delete the reference to contract breach. The *Southland* court concluded that the Legislature intended to apply the one-year limitations period to both tortious and contractual instances of legal malpractice, especially in light of the legislative records showing the purpose of the new statute was to reduce the costs of malpractice insurance. "[I]f section 340.6 is interpreted to apply only to tort actions, this purpose would be frustrated, and no change in the law would occur." (*Id.* at p. 429.)

*Southland*'s reasoning applies to the present case. The Legislature intended to enact a comprehensive, more restrictive statute of limitations for practicing attorneys facing malpractice claims. The limitation of one year was designed to counteract the potential of lengthy periods of potential liability wrought by the adoption of the discovery rule, and thereby reduce the costs of malpractice insurance. The only limitation of the one-year period was for actual fraud.

In this case, however, the trial court essentially engrafted a second limitation on the one-year period for malpractice which happens to involve a breach of fiduciary duty. Because such a breach is ungoverned by a specific statutory limitations period, the trial court concluded that the four-year "catch-all" limitations period applied. In our view, this disregards the intent of the Legislature and, because much attorney malpractice may be considered a fiduciary breach, reinstates a lengthy limitations period and thus increases the very insurance costs the Legislature sought to decrease.

We recognize that the *David Welch* decision, on which the trial court relied, did distinguish between legal malpractice which does and does not involve a fiduciary's breach: "where a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343 applies." (*David Welch Co.* v. *Erskine & Tulley, supra*, 203 Cal.App.3d at p. 893.)

However, we respectfully disagree with this conclusion. *David Welch* did not discuss *Southland* or the legislative history cited therein. It stated its conclusion without extensive analysis of the purpose behind the enactment of section 340.6. It cited no authority involving a breach of fiduciary duty in the context of legal malpractice.[2]

We therefore conclude that the action below is time barred under section 340.6, and that the demurrer should have been sustained without leave to amend.[3]

## III

### CONCLUSION

Petitioner is entitled to relief by extraordinary writ. Accordingly, let a peremptory writ of mandate issue commanding respondent superior court to vacate its order overruling petitioner's demurrer and to enter a new and different order sustaining the demurrer without leave to amend.

Haning, Acting P. J., and Hanlon, J.,* concurred.

Petitions for a rehearing were denied October 27, 1992, and the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied December 31, 1992. Panelli, J., was of the opinion that the application should be granted.

---

[2]Likewise, federal decisions which interpret California law and declare that the four-year catchall period applies to breaches of fiduciary duty do *not* involve actions based on legal practice. (See *Davis & Cox* v. *Summa Corp.* (9th Cir. 1985) 751 F.2d 1507, 1520; *Robuck* v. *Dean Witter & Co., Inc.* (9th Cir. 1980) 649 F.2d 641, 644-645; *Federal Deposit Ins. Corp.* v. *McSweeney* (S.D.Cal. 1991) 772 F.Supp. 1154, 1155-1157.)

[3]We reject real party's contention that section 340.6 is inapplicable because the failure to disclose the adverse interest supposedly occurred prior to the attorney-client relationship, and therefore did not "arise" therefrom. The duty to disclose continued throughout the period of the attorney-client relationship.

We also reject real party's contention that the one-year period of limitations, should it apply, was tolled. Tolling was neither properly pled in the complaint nor raised in opposition to the demurrer in the trial court.

*Judge of the San Francisco Superior Court sitting under assignment by the Chairperson of the Judicial Council.