[No. E019715. Fourth Dist., Div. Two. Mar. 12, 1998.]

EDMUND QUINTILLIANI et al., Plaintiffs and Appellants, v.
JOHN D. MANNERINO, Defendant and Respondent.

**COUNSEL**

Kevin A. Speir for Plaintiffs and Appellants.

Charlston, Revich & Williams, Howard Wollitz and Bruce T. Smyth for Defendant and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—In this case, we hold that an attorney who prepares and signs a contract obligating him to perform both legal and nonlegal services may not rely on the legal malpractice statute of limitations of Code of Civil Procedure section 340.6 as a defense to a cause of action alleging negligent performance of the nonlegal services.[1] However, we find that the statute is a defense against causes of action for breach of contract, breach of fiduciary duty and negligent misrepresentation.

### UNDISPUTED FACTS

On June 12, 1989, Michael Scafuto and his corporation, Stache Entertainment, Inc., obtained a special event license from the County of San Bernardino. Under the terms of the license, Mr. Scafuto was allowed to use Glen Helen Regional Park for a three-day concert, entitled "Main Event," to be held on Labor Day weekend, 1990.

On July 14, 1989, Stache Entertainment, Inc., entered into a partnership agreement with plaintiff Edmund Quintilliani for the purpose of promoting the concert. Under the terms of the agreement, Mr. Quintilliani was to finance the event and Stache Entertainment, acting through Mr. Scafuto, was to use Mr. Scafuto's skills to promote the concert.

On the same date, the partnership entered into two nearly identical independent contractor agreements drafted by defendant John D. Mannerino, an attorney. The first contract was between the partnership and Mr. Mannerino. It provides that he is an independent contractor retained by the partnership "for the purpose of providing legal representation and administrative consulting services for the production" of the concert. Under the

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

agreement, Mr. Mannerino agrees to provide the following specific services: "Contractor agrees to provide legal representation and administrative consulting in the production of a community-orientated celebration referred to as the 'Main Event.' " Mr. Mannerino's duties are not further specified in the agreement. Mr. Mannerino's compensation for services is set at 15 percent of the net profits of the concert.

The second contract is between the partnership and Jackie Amsler. Ms. Amsler was not a lawyer and her contract provides that she will provide "administrative consulting" services for the concert for 5 percent of the net profits of the concert. The services she is to perform are not otherwise defined in the agreement. In all other respects, the agreement is identical to Mr. Mannerino's agreement.

The concert was unsuccessful and Mr. Quintilliani, acting in his name and in the name of the partnership, sued Mr. Mannerino and Ms. Amsler. Suit was filed on October 1, 1991, which was more than one year after Mr. Mannerino terminated his representation of the partnership, and more than one year after the failure of the concert. Accordingly, Mr. Mannerino filed a motion for summary judgment, alleging that the action was barred by the one-year statute of limitations contained in section 340.6. Mr. Quintilliani did not contend that the tolling provisions in that section apply to extend the one-year period.

The trial court agreed that the action was barred by section 340.6 and granted the motion for summary judgment. This appeal followed.

## STANDARD OF REVIEW

Our review of the trial court's granting of a motion for summary judgment is guided by the provisions of section 437c. Subdivision (c) of that section provides: "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

Our review of the trial court's decision to grant the summary judgment motion is a de novo review. "An appellate court determines de

novo whether there is a genuine issue of material fact and the moving party was entitled to summary judgment as a matter of law." (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].)

"An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.] On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

Our review begins with the pleadings. "The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact." (*Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].)

Subdivision (o)(2) of section 437c provides: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."

Although section 437c was substantively amended in 1992 and 1993, the initial burden of proof remains with the moving party. We agree with *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733 [41 Cal.Rptr.2d 719]: "Prior to the adoption of the 1992 amendments to section 437c, it was a well-established rule under the pre-January 1, 1993, versions of section 437c that unless the moving party meets its burden, summary judgment could not be ordered, even though the opposing party has not responded sufficiently or at all. Stated differently, in summary judgment litigation occurring prior to January 1, 1993, there was no obligation on the opposing party to show that a triable issue of material fact existed unless and until the moving party had met its burden. [Citations.] Nothing in the language of the 1992 adoption of section 437c, subdivision (n)(2) amendments abrogates this well-established summary judgment requirement that the initial burden rests with the moving

party. In fact, the express statutory language places the burden on the moving defendant or cross-defendant. Furthermore, we have carefully reviewed the legislative committee reports prepared in connection with the 1992 amendments to section 437c and there is no evidence of any legislative intent to modify the initial burden of proof which is allocated to the moving party." (*Id.,* at pp. 743-744.)

 The final step in our review, if the burden has shifted, is to determine if the filings in opposition raise a triable issue of material fact. If they do, the motion must be denied. If they do not, the motion must be granted. (*River Bank America* v. *Diller* (1995) 38 Cal.App.4th 1400, 1410-1411 [45 Cal.Rptr.2d 790].)

### THE SECOND AMENDED COMPLAINT

Plaintiffs alleged 12 causes of action. The first two causes of action for legal malpractice are clearly barred by the statute of limitations of section 340.6, and are not the subject of this appeal. The causes of action in issue are the third, fifth, sixth, seventh, ninth and tenth causes of action.

The third cause of action is against Mr. Mannerino as a consultant. It alleges that the partnership retained him to provide administrative consulting services in the production of the concert. It alleges that, in rendering administrative consulting services, he "failed to exercise reasonable care and skill and negligently advised the Partnership in several instances, and failed to make certain critical disclosures as described hereinabove." The third cause of action further alleges that the partnership relied upon Mr. Mannerino's advice and sustained damages as a result.

The fifth cause of action is for breach of contract against Mr. Mannerino and Ms. Amsler. Under this cause of action, the partnership alleges that Mr. Mannerino breached the independent contractor agreement, resulting in damages to the partnership.

The sixth and seventh causes of action are by Mr. Quintilliani and the partnership, respectively, against Mr. Mannerino for breach of fiduciary duty. The key allegations in the sixth cause of action are that Mr. Mannerino represented that he was "a highly qualified, licensed professional with expert knowledge and experience both as an attorney and as a consultant, and in particular, as one who could evaluate the potential profits and risks (legal or financial) associated with the production of the 'Main Event' and further, as one who could operate as an effective advocate for the Partnership's and Quintilliani's interests with the County of San Bernardino for the production

of the 'Main Event'." The key allegations of the seventh cause of action are that Mr. Mannerino represented to the partnership that he "was a highly qualified, licensed professional with expert knowledge and experience as an attorney, and as a consultant, and in particular, as one who could represent the Partnership in negotiations with the County of San Bernardino for the production of the 'Main Event'." A fiduciary relationship is then alleged in both causes of action, as is breach of that relationship by Mr. Mannerino.

The ninth and tenth causes of action are by Mr. Quintilliani and the partnership, respectively, against Mr. Mannerino for negligent misrepresentation. It is generally alleged that Mr. Mannerino "falsely represented to Quintilliani his ability to produce the 'Main Event', the costs associated with producing the 'Main Event', the likely profit to be reaped from Quintilliani's personal investment in the 'Main Event,' and his ability to act as an advocate on behalf of both Quintilliani and the Partnership with regard to negotiations with the County of San Bernardino relating to the 'Main Event'." Specific allegations include allegations that Mr. Mannerino falsely represented that "he had the necessary expertise to advise Quintilliani and the Partnership regarding the organization and production" of the concert and that he could operate as an advocate in dealings with the County of San Bernardino.

Since Mr. Mannerino's answer pled the one-year statute of limitations of section 340.6 as an affirmative defense, the issue presented by the pleadings is whether section 340.6 is a valid defense against the six causes of action described above.

## Mr. Mannerino's Summary Judgment Motion

The summary judgment motion alleged that all of the causes of action were barred by section 340.6. The documentary evidence in support of the motion was designed to prove that plaintiffs had knowledge of the applicable facts more than one year prior to the filing of the action, and that none of the tolling provisions of section 340.6 applied. In the absence of challenge, the presentation was sufficient to meet the initial burden of proof imposed on the moving party, i.e., the burden to show the existence of a complete defense to the action. (§ 437c, subd. (o)(2).)

## Plaintiff's Response to the Summary Judgment Motion

In response to the summary judgment motion, plaintiffs argued that section 340.6 was inapplicable to the third and fifth causes of action, and that the applicable statute of limitations was the general four-year statute of limitations. Plaintiffs also argued that the legal and nonlegal roles of Mr.

Mannerino under the contract made it impossible to apply section 340.6 to his activities.

In addition to the legal argument, plaintiffs presented a factual argument by proposing to prove additional facts regarding the duties to be performed by Mr. Mannerino. Under this heading, plaintiffs contended that Mr. Mannerino was to perform the following categories of services: (1) preparation of the three agreements described above, i.e., the partnership agreement and the two independent contractor agreements; (2) draft and review legal documents necessary for the concert; (3) promote the event; (4) provide legal representation and administrative consulting services; (5) prepare a business plan and proper budget; (6) negotiate on behalf of the partnership with the County of San Bernardino "and use his political influence with public officials at the County"; (7) obtain additional investors; (8) recommend personnel "who could help both him and the Main Event"; (9) obtain sponsors; (10) attend meetings; and (11) "use his expertise to advise the venture regarding both legal and financial matters."

The principal factual authority cited for these assertions is the declaration of plaintiff Quintilliani. The declaration states that it was Mr. Quintilliani's "understanding that Defendant Mannerino was to play many roles for the Main Event . . . ." If plaintiffs successfully demonstrated that all of these duties were performed by Mr. Mannerino under the general description of "administrative consulting," the summary judgment motion would be defeated. The same is true if their legal conclusions were correct.

### DEFENDANT'S REPLY TO PLAINTIFFS' CONTENTIONS

In response, Mr. Mannerino challenged plaintiffs on both factual and legal grounds. First, he asserted that plaintiffs had failed to assert facts sufficient to establish that Mr. Mannerino had agreed to perform any nonlegal tasks, or that he had done so negligently. Secondly, he argued that plaintiffs had not stated a legal basis for the claim that section 340.6 was inapplicable "if the causes of action alleging breaches of obligations arising during an attorney-client relationship involve some tasks which might be able to be performed by a non-lawyer."

### ALLEGED FACTUAL ISSUES

As noted above, defendant objected to the declaration of Mr. Quintilliani as conclusory and contradictory to his deposition testimony. Having reviewed the record, and without detailing the position of the parties on each alleged duty, we agree with Mr. Mannerino that the further definition of the

term "administrative consulting" in Mr. Quintilliani's declaration was insufficient to establish that Mr. Mannerino ever specifically agreed to carry out the listed duties, or that he ever breached any such agreement, regardless of Mr. Quintilliani's unilateral "understanding." For example, Mr. Quintilliani states that it was Mr. Mannerino's duty to promote the event. He cites Mr. Mannerino's deposition testimony that he was to assist Mr. Scafuto and Ms. Amsler. However, in his own deposition, Mr. Quintilliani testified that Mr. Scafuto was the promoter of the event. Plaintiffs also claimed that Mr. Mannerino was responsible for preparing a business plan and budget for the event, although Mr. Quintilliani testified in his deposition that he told Mr. Scafuto and Ms. Amsler to prepare a budget.

Nevertheless, the undisputed fact remains that Mr. Mannerino, in the contract he prepared, agreed to provide "legal representation and administrative consulting" services for a percentage of the net profits of the concert. In order to give the whole document meaning, the term "administrative consulting" must be taken to mean something in addition to legal representation. In addition, the compensation term is more suitable to a business contract than to a lawyer's contingent fee contract. We also agree with Mr. Quintilliani that it is significant that Mr. Mannerino drafted an independent contractor agreement rather than using a standard attorney retainer agreement.

It is also alleged that Mr. Mannerino and Mr. Scafuto had previously produced the Rancho Cucamonga Grape Harvest Festival for several years, were experienced in producing concerts, had the abilities to profitably produce the "Main Event," and that Mr. Quintilliani relied on their representations.

We thus conclude that Mr. Mannerino agreed to provide both legal and nonlegal services under the terms of the independent contractor agreement. Since he was sued in the third cause of action for negligent performance of nonlegal services, and in the fifth cause of action for breaching the independent contractor agreement, the first legal issues presented are whether section 340.6 bars the third and fifth causes of action.

THE THIRD CAUSE OF ACTION FOR NEGLIGENCE AS A CONSULTANT

Section 340.6 provides, in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ."

Respondent contended at oral argument that the term "professional services" means that the statute applies to all professional services performed by an attorney, without differentiation between legal and nonlegal services. In other words, counsel contended that, once an attorney-client relationship is established, the mere fact that an attorney goes beyond strictly legal functions does not mean that those functions are outside the scope of professional services, even though they could properly be performed by a nonattorney.

We disagree with this broad interpretation of the statute. When an attorney becomes involved in nonlegal business activities, he may not claim protection of the legal malpractice statute because the basis for a legal malpractice action is a claim of *professional* negligence. As an attorney, Mr. Mannerino owed the partnership "a duty to use such skill, prudence, and diligence as other attorneys commonly possess and exercise, [and to prevail it must be shown] that he had breached that duty, and that his breach had caused injury to [plaintiff]." (*Radovich* v. *Locke-Paddon* (1995) 35 Cal.App.4th 946, 954 [41 Cal.Rptr.2d 573].) Thus, the term "professional services" must mean services performed by an attorney which can be judged against the skill, prudence and diligence commonly possessed by other attorneys. ▌ "Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180 [98 Cal.Rptr. 837, 491 P.2d 421]; see also *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) ▌ Accordingly legal malpractice must be limited to negligence in the providing of legal services. While some lawyers are undoubtedly successful concert promoters, they are not held to the standard of a lawyer in producing concerts because the standard is stated in terms of skills possessed by a lawyer and the professional services provided by the lawyer, not the business standards by which concert promoters are judged.[2]

In *Von Rott* v. *Johnson* (1983) 148 Cal.App.3d 608 [196 Cal.Rptr. 55], an attorney acted as an attorney and as a pledgeholder. The court said: "Section 340.6 by its terms applies only to actions arising out of the performance of professional services by attorneys. Defendant's role as a pledgeholder was separate and distinct from his role as attorney. In his role as pledgeholder, defendant acted simply as an escrow, holding shares of the corporation for the benefit of plaintiff . . . . One need not be an attorney to act as

---

[2]For the ultimate in malpractice and fraud by an attorney who represents clients in both legal and business capacities, see *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125 [217 Cal.Rptr. 89].

pledgeholder, and it is clear that one acting as a pledgeholder is not performing legal services." (*Von Rott, supra,* at pp. 612-613.) The court thus concluded that "defendant's status as pledgeholder was only tangentially related to the legal representation he provided plaintiff and thus did not operate to toll the statute of limitations." (148 Cal.App.3d at p. 613.)

If the trial court here finds that the defendant's role as an administrative consultant was separate and distinct from his role as an attorney, the same principle would apply. When Mr. Mannerino agreed to provide administrative consulting services, he shed the protection of section 340.6 and embarked on a business venture with the partnership that is subject to the ordinary statute of limitations. In other words, Mr. Mannerino's role as a provider of administrative consulting services was separate and distinct from his role as an attorney. An attorney who undertakes to provide both legal and nonlegal services to a client, and who is sued because of deficiencies in performing the nonlegal services, may not claim the protection of section 340.6 because "[*t*]*he California statute does not include actions for wrongs by the defendant that were not committed as an attorney . . . . The statute only applies to the performance of legal services.*" (2 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 21.8, pp. 763-764, italics added, fn. omitted; cf. *Di Grazia* v. *Anderlini* (1994) 22 Cal.App.4th 1337, 1344 [28 Cal.Rptr.2d 37] [Attorney sued as trustee of trust and the only potential limitation periods considered were three- and four-year statutes.].)

As a fallback position, Mr. Mannerino argues that section 340.6 applies if the gravamen of the action is legal malpractice, regardless of whether some of the duties performed were nonlegal duties. He relies on *Kracht* v. *Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019 [268 Cal.Rptr. 637]. In that case, the attorneys successfully demurred on grounds that the causes of action stated in the complaint were not assignable. In response, plaintiff argued that the count alleging legal malpractice was assignable and, even if it was not, the remaining claims were not for legal malpractice and hence were fully assignable. The appellate court found that the gravamen of all the claims was legal malpractice, and all such claims were barred by the rule against assignment of a malpractice claim. The court said: "An injury suffered by reason of a defendant's conduct gives rise to a single cause of action, regardless of how many theories are pled by the complaint. [Citation.] Where the injury is suffered by reason of an attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract. [Citations.]" (*Id.,* at pp. 1022-1023.) Since all counts were rooted in the same conduct, professional negligence, they were all governed by the same rules regarding assignment of malpractice claims. (*Id.,* at p. 1023.)

While we generally agree with the stated principle, we find *Kracht* inapplicable to the third cause of action. That cause of action is based on a different contractual provision and arguably different conduct than the legal malpractice alleged in the first two causes of action. The third cause of action is based on the theory that Mr. Mannerino agreed to provide administrative consulting services in addition to legal representation, and did so negligently. Thus, if there was a "gravamen" of the action, it was different because the conduct relied on was different. ■ "[T]he gravamen of a complaint and the nature of the right sued on, rather than the form of the action or relief demanded, determines which statute of limitation applies." (*Davis & Cox* v. *Summa Corp.* (9th Cir. 1985) 751 F.2d 1507, 1520.) Similarly, in *Day* v. *Greene* (1963) 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802], our Supreme Court stated: "The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded." (*Id.*, at p. 411; *Barton* v. *New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207 [51 Cal.Rptr.2d 328].) ■ Here, the basis for the third cause of action is negligence, and its principal purpose is to recover damages for inadequate provision of administrative consulting services. In other words, the conduct sued on in the first two causes of action was deficient providing of legal services while the conduct sued on in the third cause of action was deficient providing of administrative consulting services. Although Mr. Mannerino has pointed out that the conduct alleged in the second and third causes of action is essentially identical, there is clearly a factual issue as to whether the conduct was legal or nonlegal. In reversing the summary judgment on the third cause of action, we merely allow the case to proceed to trial on the allegations that Mr. Mannerino negligently performed a contract to provide administrative consulting services.

It is also apparent that the services to be performed under the independent contractor agreement are so vague that it cannot be determined which were predominant. In particular, the term "administrative consulting services" was not defined in the contract, and there are clearly factual issues as to the nature of the consulting services Mr. Mannerino agreed to perform under the contract. While Mr. Mannerino would ignore the term "administrative consulting services" and characterize all of his duties as legal representation, Mr. Quintilliani argues that there were a broad range of nonlegal services to be performed under the independent contractor agreement. Because the nature of the duties to be performed and the nature of the alleged wrongful conduct are factually disputed issues, we cannot say whether the gravamen of the action is legal malpractice or not, i.e., we cannot say whether the legal or nonlegal functions were the predominant reason for the agreement, nor can we say whether the alleged wrongful conduct was legal or nonlegal in nature.

We thus conclude that section 340.6 did not apply to bar the third cause of action for negligent performance of administrative consulting services.[3] Defendants thus failed to establish a complete defense to that cause of action and the trial court erred in granting summary judgment on that ground.

## THE FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT

In the fifth cause of action, the partnership alleges that Mr. Mannerino breached the independent contractor agreement. The only factual allegations are those common to all causes of action. The common allegations do not differentiate between legal and nonlegal duties. In addition, as discussed above, the declaration of Mr. Quintilliani is insufficient to raise factual issues as to the specific duties to be performed under the rubric of administrative consulting services, or breach of those duties. Although Mr. Mannerino clearly agreed to perform administrative consulting services, neither the fifth cause of action nor the factual declarations establish that he breached the agreement as to the performance of those services. Indeed, they can just as easily be read to apply to the legal representation alleged in the same cause of action.

Because the contract was for both legal and nonlegal services, we agree with Mr. Mannerino that the fifth cause of action inextricably intertwines the two, and section 340.6 should apply to that cause of action. Accordingly, the trial court correctly granted Mr. Mannerino's motion for summary judgment as to the fifth cause of action.

## THE CAUSES OF ACTION FOR BREACH OF FIDUCIARY DUTY

The sixth and seventh causes of action are against Mr. Mannerino for breach of fiduciary duty. The fiduciary duty arose from the facts that Mr. Mannerino had previously represented Mr. Quintilliani as an attorney, and that he was attorney for the partnership under the independent contractor agreement. Since the fiduciary obligations arose solely from these attorney-client relationships, we agree with Mr. Mannerino that the statute of limitations for legal malpractice is applicable.

In *Pompilio v. Kosmo, Cho & Brown* (1995) 39 Cal.App.4th 1324 [46 Cal.Rptr.2d 409], plaintiff sued for legal malpractice and also alleged a cause of action for breach of fiduciary duty. The court held that, since the

---

[3]Since professional malpractice insurance covers situations in which the attorney is retained principally for legal services, our holding is not in conflict with the purposes of section 340.6, nor does it create any gap in insurance coverage. (See generally, 2 Mallen & Smith, Legal Malpractice, *supra,* § 21.8, pp. 762-764; 4 Mallen & Smith, *supra,* § 33.8, pp. 301-311.)

breach of fiduciary duty cause of action concerned the attorney's acts and omissions while representing plaintiff, it sounded in legal malpractice and section 340.6 was therefore applicable.

Similarly, in *Radovich* v. *Locke-Paddon, supra,* 35 Cal.App.4th 946, plaintiff sued for both legal malpractice and breach of fiduciary duty. The parties agreed that section 340.6 was applicable to the breach of fiduciary duty cause of action. (35 Cal.app.4th at p. 966.)

However, in *David Welch Co.* v. *Erskine· & Tulley* (1988) 203 Cal.App.3d 884 [250 Cal.Rptr. 339], the court rejected the argument that section 340.6 was applicable, saying: "But where a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343 applies. [Citations.]" (*David Welch Co., supra,* at p. 893.) The authorities cited do not relate to legal malpractice actions, and we agree that *Welch* should not be followed, since it did not cite any authority dealing with a breach of fiduciary duty in the context of attorney malpractice. (*Stoll* v. *Superior Court* (1992) 9 Cal.App.4th 1362, 1369 [12 Cal.Rptr.2d 354]; *Pompilio* v. *Kosmo, Cho & Brown, supra,* 39 Cal.App.4th 1324, 1329; see also 2 Mallen & Smith, *supra,* § 21.8, pp. 762-763, fn. 34.)

In *Stoll* v. *Superior Court, supra,* 9 Cal.App.4th 1362, the court considered the bar of section 340.6 in the context of a malpractice case involving a claim of breach of fiduciary duty. The court observed: "Because such a breach [of fiduciary duty] is ungoverned by a specific statutory limitations period, the trial court concluded that the four-year 'catch all' limitations period applied. In our view, this disregards the intent of the Legislature and, because much attorney malpractice may be considered a fiduciary breach, reinstates a lengthy limitations period and thus increases the very insurance costs the Legislature sought to decrease." (9 Cal.App.4th at p. 1368.) Since most claims for breach of fiduciary obligations can be restated as a claim for attorney malpractice, and since the fiduciary obligations here arose out of the attorney-client relationship, we find that section 340.6 applies to such claims. "In all cases other than actual fraud, whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period applies. [Citation.]" (*Levin* v. *Graham & James* (1995) 37 Cal.App.4th 798, 805 [44 Cal.Rptr.2d 69].)

We therefore conclude that the trial court correctly granted Mr. Mannerino's motion for summary judgment as to the sixth and seventh causes of action for breach of fiduciary duty.

## The Causes of Action for Negligent Misrepresentation

The ninth cause of action is by Mr. Quintilliani against Mr. Mannerino for negligent misrepresentation. The representations alleged include representations on both legal and nonlegal matters. For example, it is alleged that Mr. Mannerino represented that "he had the necessary expertise to advise Quintilliani and the Partnership regarding the organization and production of the Main Event," and that he "lacked the necessary expertise and experience to adequately advise Quintilliani and the Partnership regarding the organization and production of the Main Event." It is also alleged that Mr. Mannerino represented that he could act as an effective advocate with the county, but was unable to do so.

The 10th cause of action is by the partnership against all defendants for negligent misrepresentation. Negligent misrepresentation is a form of deceit which may be practiced by anyone, attorneys or a nonattorneys. Obviously, both attorneys and nonattorneys may be liable for their negligent misrepresentations. ■ "When committed by an attorney, the tort of fraud or deceit is determined essentially by the same rules that apply to any defendant, despite whether one is a professional." (1 Mallen & Smith, *supra*, § 8.9, p. 596.) ■ "Where a defendant makes false statements, honestly believing them to be true, but without reasonable grounds for such belief, he may be held liable for negligent misrepresentation . . . ." (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111 [128 Cal.Rptr. 901].)

■ Again, the alleged misrepresentations in these causes of action are for both legal and nonlegal matters. Both defendants, an attorney and a nonattorney, are included in the tenth cause of action.

We agree with Mr. Mannerino that the intermingling of alleged legal and nonlegal misrepresentations in one cause of action should lead to application of section 340.6.

Mr. Quintilliani argues that section 340.6 should not apply to these causes of action because it contains an exception for fraud actions. He then contends that negligent misrepresentation is a species of fraud, and the exception should apply.

Negligent misrepresentation is, of course, a species of fraud. (Civ. Code, §§ 1709, 1710; see generally, 5 Witkin, Summary of Cal. Law (9th ed. 1988) §§ 676, 677 pp. 778-779.) Nevertheless, we agree with Mr. Mannerino that the exception for actual fraud in section 340.6 was intended to apply to

intentional fraud, not constructive fraud resulting from negligent misrepresentation. Constructive fraud may result from a breach of fiduciary duty, regardless of intent or motive, and the Legislature intended to only except instances of actual fraud on grounds that acts of actual fraud should not be treated as legal malpractice. (*Stoll* v. *Superior Court, supra,* 9 Cal.App.4th 1362, 1368; Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 State Bar J. 22, 77.) We therefore find the actual fraud exception inapplicable to the alleged negligent misrepresentation causes of action.

Accordingly, the trial court properly applied section 340.6 to the negligent misrepresentation causes of action and found them to be barred by the statute of limitations.

### DISPOSITION

The judgment is reversed as to the third cause of action. The judgment is affirmed as to all other causes of action. Each party is to bear its own costs on appeal.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied April 2, 1998, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 27, 1998.