Filed 6/12/15  Zertuche v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JESSE GABRIEL ZERTUCHE,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>COUNTY OF SANTA CLARA,<br><br>     Defendant and Respondent. | H040240<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV202070) |

Plaintiff Jesse Gabriel Zertuche brought this action against the County of Santa Clara (County) to recover for injuries he suffered when his motorcycle went into a drainage ditch alongside a County road.  The superior court granted summary judgment to the County, ruling that as a matter of law the drainage ditch was not a "dangerous condition" within the meaning of Government Code sections 830 and 830.2.[1]  Plaintiff appeals, contending that the County did not meet its burden as the moving party on summary judgment and that triable issues remain as to whether the drainage ditch constituted a dangerous condition.  We agree with plaintiff's first point and therefore must reverse on that ground.

---

[1]  All further statutory references are to the Government Code except as otherwise indicated.

*Background*

The events giving rise to plaintiff's lawsuit were undisputed in the summary judgment proceedings. On September 19, 2010, a cold but cloudless day, plaintiff was riding his motorcycle southbound behind an orange SUV on McKean Road, a two-lane, minor arterial rural road that runs through the foothills of Santa Clara County. Plaintiff was traveling at about 35 miles per hour, two car lengths behind the SUV, when the driver suddenly slammed on its brakes. Plaintiff braked and swerved to the right, ending up in the drainage ditch adjacent to the shoulder of the road.

Plaintiff sued the County, claiming injuries resulting from the dangerous condition of the area where the accident occurred. The County answered and eventually moved for summary judgment on the ground that the accident site did not constitute a dangerous condition of public property, based on the physical characteristics of the road in that location and the absence of any accident history there. After examining the moving and opposing papers and the accompanying exhibits, the superior court agreed with the County and granted the motion, finding that as a matter of law the drainage ditch was not a dangerous condition within the meaning of section 830.2.[2] From the ensuing judgment for the County, plaintiff brought this timely appeal.

*Discussion*

1. *Standard of review*

In reviewing the superior court's ruling, we adhere to established principles of review. Summary judgment is proper if "all the papers submitted show that there is no

---

[2] Using the language of section 830.2, the court stated, "The Court concludes that, even when what little evidence that has been submitted is viewed in the light most favorable to Plaintiff as required by Gov. Code §830.2, any risk created by the drainage ditch . . . 'was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' "

triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v*. *Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

As the moving party, it was the County's initial burden to show that the action had no merit—that is, "that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subds. (a), (p)(2).)  The County's obligation was thus to "present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or . . . establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence' " to support a necessary element of the cause of action.  (*Kahn v*. *East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1003, quoting *Aguilar*, *supra*, 25 Cal.4th at p. 854; *Guz v*. *Bechtel National*, *Inc*. (2000) 24 Cal.4th 317, 334.)

If a moving defendant fails to meet this initial burden, it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied.  (*Quintilliani v*. *Mannerino* (1998) 62 Cal.App.4th 54, 59-60.)  However, if the defendant makes a prima facie showing that justifies a judgment in its favor, the burden then shifts to the plaintiff to make a prima facie showing that there exists a triable issue of material fact.  (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)  "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ."  (Code Civ. Proc., § 437c, subd. (p)(2).)

Our review is de novo. (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334; *Daly v. Yessne* (2005) 131 Cal.App.4th 52, 58.) We view the evidence "in a light favorable to plaintiff as the losing party [citation], liberally construing [his] evidentiary submission while strictly scrutinizing [the defendant's] own showing, and resolving any evidentiary doubts or ambiguities in [the] plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) "We need not defer to the trial court and are not bound by the reasons for the summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.)

2. *Plaintiff's Complaint*

Because summary judgment review is defined by the issues raised in the pleadings, we first direct our attention to the material allegations of plaintiff's complaint. Plaintiff's lawsuit was premised entirely on "negligence and carelessness" in the County's "design, construction, maintenance, inspection, repair and control of the drainage ditch," thereby presenting a "dangerous, defective and hazardous condition." When he swerved to avoid the vehicle in front of him, he went onto the shoulder and into the drainage ditch, causing him to lose control and be thrown over the handlebars of his motorcycle, which then landed on top of him. The drainage ditch itself was "an unsafe and dangerous road condition," which could not be seen by a motorist and which had "no protective guardrail or warning sign." As a result, plaintiff alleged, he suffered "a fractured right hip that required surgical repair and subsequent complications including infection and septic shock that required further surgeries including the removal of [plaintiff's] right hip and part of his right leg. Plaintiff . . . suffered and continues to suffer catastrophic economic damages, including future surgeries, incurred and ongoing

4

medical bills, home care expenses, lost income, diminution in earning capacity and other economic damages of an amount to be determined at trial."[3]

3. *The County's Motion and Plaintiff's Opposition*

The County's position was that no triable issues of material fact existed regarding the condition of the drainage ditch. Relying on section 830.2, it maintained that any risk associated with the ditch was "of a trivial, minor, or insignificant nature." The County pointed out that the Santa Clara County Roads and Airports Department had no record of another accident involving the drainage ditch in that location dating back to 2001, and it argued that the physical characteristics of the site presented no risk.

In support of its position the County offered the declaration of Masoud Akbarzadeh, a traffic engineer with the Santa Clara County Roads and Airports Department (the Department). Akbarzadeh described the dimensions of the roadway and the drainage ditch. It consisted of a shoulder 7-7.5 feet wide next to the drainage ditch. The drainage ditch itself, which collected water and routed it to a culvert farther south, was 2.5 to 4.5 feet wide and 4-12 inches deep. The southbound lane was about 10.5 feet wide. No changes had been made since the day of the accident. Akbarzadeh also indicated that his review of the Department's files, including occurrence reports from the California Highway Patrol, had uncovered no history between 2001 and 2010 of any accident involving a drainage ditch within 500 feet in either direction of power pole No. 40683, which was about 72 feet north of the accident site.

Plaintiff admitted all of these facts. He did not, however, admit Akbarzadeh's additional statement that the roadway at that location "reflected the typical roadway characteristics of a rural road." In his opposition plaintiff submitted a declaration from his expert, Edward Stevens, a highway and transportation engineer. Stevens opined that

---

[3] While plaintiff alleged that his hip was "crushed," the County described it as "dislocated." Of course, the nature and severity of plaintiff's injury are not at issue here.

5

there was an insufficient "clear zone" and a back slope of the ditch that failed as a barrier to vehicles going off the road.  Stevens explained that the state's transportation department (CALTRANS) had established a recommended clear zone of 20 feet from the fog line for a "conventional road" and an "absolute minimum" of eight feet where 20 feet is impractical.  Stevens concluded that "the lack of conformance to accepted practice for roadside safety created an unsafe condition of public property for vehicles that erroneously leave the roadway at or near the accident scene."  Stevens also called attention to a "Roadside Design Guide" published by the American Association of State Highway and Transportation Officials (AASHTO), which recommended "ditch configurations that will be compatible with clear zone philosophy because the combinations of fore slope and back slope are considered to be negotiable by an errant vehicle."  In the area of the accident an earth berm formed the back slope of the ditch, but it did not comply with any approved design or standard for a vehicular barrier, nor would it have been able to redirect vehicles leaving the road.  Stevens attached screen shots of the crash testing of a full-sized pickup truck:  rather than being redirected, the truck appeared to have crossed over a four-foot earth barrier that was configured in a vertical-horizontal ratio of one to one.

The County objected to all of the key statements in Stevens's declaration.  The court overruled the objection to the expert's opinion that even the "absolute minimum" of eight feet was not met at the accident site, as well as the opinion that the clear zone was compromised by the "steep fore and back slopes" of the "non-negotiable ditch."  But the court sustained the County's relevance objection to Stevens's opinion that an earth berm is not an approved design or effective as a vehicular barrier, along with his illustration with the crash testing of the pickup truck.  It also sustained the objection to the expert's conclusion that "the lack of conformance to accepted practice for roadside safety created an unsafe condition of public property for vehicles that erroneously leave the roadway at or near the accident scene."

6

*4. Application of the Tort Claims Act*

Under the California Tort Claims Act (§ 810 et seq.), a public entity is not liable for any injury unless otherwise provided by statute. (§ 815.)  Section 835, however, provides a basis for finding such liability if the injury was caused by a dangerous condition of public property.  The plaintiff must establish "that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶]  (b) The public entity had actual or constructive notice of the dangerous condition  . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The term "dangerous condition" is defined in section 830 to mean "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  As explained by the California Law Revision Commission, "A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons. The definition would, however, take into consideration the standard of care that would be applicable to foreseeable users of the property."  (See also *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704 [court determines dangerousness as a matter of law to prevent cities from becoming insurers against injuries from trivial defects].)  In determining whether the condition of public property poses a substantial risk, courts must consider not only the characteristics of the injury site, but also circumstances that might have made the defect more dangerous than

7

would be apparent from its physical description. *(Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734

The focus of the County's summary judgment motion was section 830.2, which states: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." According to the Law Revision comment to this provision, it was included "to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous."

The allusion to "due care" in section 830.2 does not mean that the plaintiff will have to prove that he or she was exercising due care at the time of injury. "The status of a condition as 'dangerous' for purposes of the statutory definition does *not* depend on whether the plaintiff or other persons were actually exercising due care but on whether the condition of the property posed a substantial risk of injury to persons who *were* exercising due care." (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 768.) " 'Reasonably foreseeable use with due care . . . refers to use by the public generally, not the contributory negligence of the particular plaintiff who comes before the court; the particular plaintiff's contributory negligence is a matter of defense.' " (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 239.) Thus, a defendant moving for summary judgment cannot succeed simply by offering evidence that the plaintiff did not use due care. (See *Lane v. City of Sacramento* (2010) 183 Cal. App. 4th 1337, 1347 (*Lane*)

8

[proof that plaintiff driver was not using due care insufficient to show that plaintiffs could not establish their claims].)

"The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1133; *Peterson v. San Francisco Community College Dist*. (1984) 36 Cal.3d 799, 810.) Accordingly, summary judgment may be appropriate "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used." (*Mathews v. City of Cerritos* (1992) 2 Cal. App. 4th 1380, 1382; *Lane*, *supra*, 183 Cal.App.4th at p. 1344; *Sambrano v. City of San Diego*, supra 94 Cal.App.4th at p. 234.)

Nevertheless, to justify summary judgment a moving defendant must "present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Aguilar*, *supra*, 25 Cal.4th at p. 854.) In this case the County cites three circumstances as evidence that no dangerous condition existed at the site of plaintiff's injury. First, it notes, the speed limit on the roadway was only 40 miles per hour. This fact is not material, as plaintiff was traveling below the limit, at 35 miles per hour, and left the roadway to avert a collision. Next, the County points out that the roadway was "relatively straight with a 7 to 7.5 foot shoulder immediately adjacent to the fog line of the southbound lane." Thus, the drainage ditch was located at least seven feet from the outer edge of the lane of travel. But the County did not produce evidence establishing the adequacy of these distances for vehicles foreseeably leaving the road, nor evidence of the configuration and composition of the drainage ditch itself which could have established that it did not pose a danger to a motorist running off the road and shoulder. The County's most useful fact was in the declaration of its expert, Akbarzadeh, who stated that Department files going back to 2001 contained no reports of accidents

9

involving a drainage ditch in the area of plaintiff's injury. Whether substantially similar accidents had occurred at that location is relevant, but it is not dispositive. (*Lane*, *supra*, 183 Cal.App.4th at p. 1346; *Salas v. Department of Transportation* 198 Cal.App.4th 1058, 1071, 1074; cf. *Cole v. Town of Los Gatos*, *supra*, 205 Cal.App.4th at pp. 779-780 [absence of prior accidents or injuries on gravel shoulder might support finding in town's favor based on lack of notice but is "hardly enough to sustain a summary judgment"].)

It was foreseeable that a motorist using due care would suddenly need to swerve off the road, propelling him or her onto the shoulder and then into the drainage ditch. Whether the location, structure, and composition of the ditch made it a "minor, trivial or insignificant" risk cannot be determined as a matter of law from the County's evidence. (§ 830.) This does not mean, of course, that the County was liable; we hold only that we cannot make the requested determination as a matter of law from the physical dimensions of the roadway and shoulder and the absence in the Department's files of prior reports of injury associated with the drainage ditch. We therefore cannot conclude as a matter of law that the drainage ditch, together with the size and composition of the shoulder, did not constitute a dangerous condition of public property. Because the County failed to meet its initial burden of production, the burden does not shift to plaintiff to demonstrate the existence of a triable issue of material fact on the existence of a dangerous condition of public property.

The County does not alternatively refute any of the additional elements of liability under section 835. In its summary judgment motion it did not establish, for example, that the injury was not proximately caused by the alleged dangerous condition, that the alleged dangerous condition did not create "a reasonably foreseeable risk of the kind of injury that was incurred," or that the County had no "actual or constructive notice" of the alleged dangerous condition "a sufficient time [before] the injury to have taken measures to protect against the dangerous condition." (§ 835.) It may well be that further proceedings demonstrate that one or more of these elements, including the existence of a

10

dangerous condition, cannot be proved by factually or legally sufficient evidence.[4] (Cf. *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 188 [even where plaintiff's prospects of success at trial are slight, appellate court is bound by the summary judgment statute to distinguish between a weak case and a case that " 'cannot be established' "].)But at this point we cannot say that reasonable minds can come to only one conclusion about this issue.  Because the County has not produced evidence sufficient to establish its entitlement to judgment as a matter of law, reversal is required.

*Disposition*

The judgment is reversed.  The trial court is directed to vacate its order granting the County's motion for summary judgment and enter a new order denying that motion. Plaintiff may recover his appellate costs.

---

[4] It is entirely conceivable, for example, that further proceedings may show that the County had no actual or constructive notice of the hazard posed by the drainage ditch, or that its condition was not the proximate cause of plaintiff's injury.

_____

ELIA, J.

WE CONCUR:



_____

RUSHING, P. J.



_____

PREMO, J.