[No. A066278. First Dist., Div. Five. Aug. 10, 1995.]

DANIEL LEVIN et al., Plaintiffs and Appellants, v.
GRAHAM & JAMES et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for partial publication, with the exceptions of parts I and III.

COUNSEL

Nicholas Damer for Plaintiffs and Appellants.

Miller, Starr & Regalia, Heidi A. Timken, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin and Richard C. Jacobs for Defendants and Respondents.

## OPINION

**KING, J.**—In this case we hold an allegation that, among other breaches of professional duty, a lawyer charged a client excessive, unreasonable or unconscionable fees for professional services does not take the action outside the one-year statute of limitations for wrongful acts or omissions by an attorney in the performance of professional services. As to such a claim, we further hold the statute is not tolled until the client actually pays the fees, but begins to run, as with any other allegation of an attorney's negligence or misconduct, except actual fraud, when the client knows or should have known the facts constituting the alleged overcharge.

Daniel Levin appeals from a summary judgment in favor of Attorney William Falik and the law firms of Howard, Rice, Nemerovski, Canady, Robertson & Falk (Howard Rice) and Miller, Starr & Regalia (Miller Starr). With his attorney, Nicholas Damer, Levin also appeals from a related award of sanctions.

In 1989, Howard Rice attorney William Falik performed legal work for Levin, managing director of Praxis Development Group, which included drafting a proposed land sale initiative for the November 1990 Redwood City ballot. In November 1989, Falik left Howard Rice for Miller Starr, taking clients Praxis and Levin with him. In the spring of 1990, Falik and his associates prepared for Levin an advocacy legal opinion on the initiative's validity.

On May 11, 1990, the City Council of Redwood City filed a petition for writ of mandate to prevent the city clerk from placing Levin's initiative on the ballot. Levin hired the law firm of Graham & James to defend the initiative. The trial court granted the writ of mandate on June 8, and entered judgment accordingly on July 3, 1990. Howard Rice billed Levin $33,829.09 in legal fees, which he paid without protest or complaint on June 17, 1991. That same month, Levin paid Miller Starr $28,739.29 in legal fees.

On October 23, 1991, Levin (in propria persona) filed a complaint against Falik and four law firms (Graham & James; Howard Rice; Miller Starr; and McCutchen, Doyle, Brown & Enersen),[1] alleging they "breached their professional duties" in six separate enumerated ways, the sixth and last of which was "by collecting unconscionable fees for professional services, in the approximate amount of one quarter of a million dollars, after having failed utterly to confer any benefit on Plaintiff." Levin further alleged defendants' "errors and omissions . . . fell below the [applicable] standard of care" for legal professionals. Finally, he alleged it was foreseeable that the failure of his development plan would cause him "substantial financial losses by virtue of the forfeiture of economic opportunities," as well as "injury to his professional and personal reputations, with resulting economic and emotional damage." He thus prayed for "special and general damages according to proof," costs, and "other appropriate remedies as the Court may deem necessary and proper, including refunds of all fees paid in excess of the reasonable value, if any, of the services rendered by Defendants." The complaint was not served on any defendant for almost two years.

On June 7, 1993, Damer addressed a letter to all defendants on the subject of: "Transactions with Dan Levin in 1990 and 1991 regarding failed Redwood City Initiatives and related unsuccessful litigation; Request for statement of position on mediation or arbitration." In a telling paragraph, Damer wrote, "In short, Dan paid a small fortune only to fail. Under such circumstances, Dan cannot help but feel some redress is in order; that the fees he paid are disproportionate to the results obtained; and that your firms should be willing to help mitigate his losses." Damer did not mention the complaint which had been filed almost two years before.

Levin finally served the complaint on defendants in September 1993. In a telephone conversation on September 22, Falik warned Levin that his suit had no merit and might lead to sanctions against him. Levin said he had nothing to lose because his attorney was taking the case on a contingency

---

[1]Graham and James did not move for summary judgment. McCutchen, with whom Falik apparently consulted briefly in the fall of 1989, eventually settled with Levin. Neither firm is a party to this appeal.

basis. On September 28, Damer wrote the defendants that Levin was willing to negotiate settlements, to submit to mediation or binding fee arbitration, or to litigate. On September 29, Falik wrote to Levin defending his work on the initiative and again urging Levin to avoid sanctions by dismissing the lawsuit.

In a telephone conversation on October 5, 1993, Damer told Howard Rice that the gravamen of Levin's complaint was that the initiative Falik had drafted was challenged and, after Levin had to pay other counsel to defend it, was declared invalid. On October 7, Howard Rice explained in writing why any claim Levin might have had was barred by the applicable statute of limitations (Code Civ. Proc., § 340.6) under any possible theory, and asked Damer to dismiss the suit. In a reply dated October 12, Damer called Howard Rice's analysis "persuasive," but suggested several ways the statute might have been tolled. On October 14, Miller Starr wrote to Damer explaining in legal and factual detail that Levin's claim was barred by the statute of limitations, and therefore frivolous and without merit. On October 15, Howard Rice addressed each of the points raised in Damer's October 12 reply, and renewed its request for voluntary dismissal of Levin's time-barred claims. Howard Rice spoke twice more to Damer to no avail.

Both law firms filed answers to Levin's complaint and proceeded with discovery. Levin did not cooperate therewith, nor make any effort to establish facts raising a triable issue as to the running of the statute. Damer was again warned that sanctions would be sought.

Falik, Miller Starr, and Howard Rice all moved for summary judgment on statute of limitations grounds. Levin did not dispute defendants' separate statements of fact, nor file any supporting declarations. In his opposition brief, Levin contended, among other things, that since "[a]n integral part of [his] actual harm is that on top of the errors and omissions in Defendants' work, the amount of fees charged, without a fee agreement, is unreasonable and excessive, even to the point of unconscionability," he incurred no damages, and thus sustained no actual harm, until he paid his bills in June 1991, at which time the statute of limitations began to run.

At the hearing on March 4, 1994, Levin argued for the first time that this was not a malpractice case at all, but merely a suit to recover unconscionable fees charged and paid. On or about March 9, the trial court granted defendants' summary judgment motions, ruling the one-year statute of limitations began to run on July 3, 1990, when the trial court entered judgment invalidating Levin's initiative, and that Levin's contention that it began to run only when he paid his bills was "contrary to the clear holding in *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691]."

In April, the successful defendants filed motions for sanctions (Code Civ. Proc., § 128.5), requesting a total of almost $48,000 in costs and fees. On May 6, 1994, Levin filed a notice purporting to appeal from the trial court's summary judgment "decision," stating his intent to amend upon issuance of a proper order or judgment. After a hearing on the sanctions motions, the trial court awarded $8,500 to Howard Rice and $6,000 to Falik, having found the "act of filing the original action in 1991 for malpractice was not entirely groundless when done, but became so sometime after the decision in *Laird* v. *Blacker* (May 7, 1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] became final. At some point what had been energetic advocacy became groundless pursuit of a meritless claim and firmness of resolve, truculence." Conceding there were "no 'bright lines' here," the court estimated the date on which defendants "gave up letter writing and began preparations for their ultimately successful summary judgment motions," and fixed as sanctions "the reasonable value of legal services" performed from that date through entry of judgment.

On June 13 and 17, 1994, the trial court filed orders granting summary judgment and sanctions to Falik and Miller Starr, summary judgments in favor of Falik, Howard Rice, and Miller Starr, and orders granting all three defendants sanctions against Levin and Damer. On August 5, Levin and Damer filed an amended and supplemental notice of appeal to include the June orders and judgments.

I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

 Code of Civil Procedure section 340.6 provides in relevant part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury . . . ."

In *Laird* v. *Blacker, supra*, 2 Cal.4th at page 609, our Supreme Court formulated the "bright line rule" (*Pleasant* v. *Celli* (1993) 18 Cal.App.4th

*See footnote, *ante*, page 798.

841, 848 [22 Cal.Rptr.2d 663]) that "the limitations period of section 340.6 commences when a client suffers an adverse judgment or order of dismissal in the underlying action on which the malpractice action is based." This holding, announced six and a half months after Levin filed his complaint, was expressly retroactive, since it did not "represent a departure from generally accepted principles." (*Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 620.) More recently, in *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245, 258 [36 Cal.Rptr.2d 552, 885 P.2d 965], the court held that "in cases involving 'transactional malpractice,' or malpractice that is based on the negligent preparation of documents that causes the client harm" (*id.* at p. 250), "when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action."

Howard Rice and Miller Starr repeatedly warned Levin, and the trial court agreed, that under *Laird*, the statute began to run when adverse judgment was entered in the litigation challenging his initiative, i.e., on July 3, 1990, over a year before he filed his complaint. Levin continues to contend that this is *not* a malpractice action subject to the limitations in Code of Civil Procedure section 340.6 and/or that it *is* a malpractice action but he did not sustain actual injury until he paid his long overdue legal bills in June 1991. Neither of these theories withstands the slightest scrutiny.

The record does not indicate that prior to filing his complaint, Levin ever questioned the amount of attorney fees charged and paid, or requested fee arbitration, "mandatory for an attorney if commenced by a client" (Bus. & Prof. Code, § 6200, subd. (c)).[2] The complaint itself is framed entirely in terms of professional negligence/legal malpractice. To the extent attorney fees are alleged to be "unconscionable," it is as the last of six instances of professional negligence or misconduct alleged by Levin (see *Schultz* v. *Harney* (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276] [allegation of excessive fees sufficient to charge professional negligence]),[3] not as a separate cause of action subject to some other statute of limitations. Similarly, the refund of any fees which, in retrospect, might be deemed "unreasonable" is asserted merely as one measure of malpractice damages. Levin's

---

[2]The attorney fees arbitration statutes do not apply to claims "for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct . . . ." (Bus. & Prof. Code, § 6200, subd. (b)(2).)

[3]*Schultz* suggests such an allegation might constitute a separate malpractice cause of action triggering its own one-year statute of limitations. Here, both law firms sent Levin their final billing more than a year before he filed suit. Since neither law nor logic would allow the statute to be tolled until the client decides to pay (see *Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 618), the statute had also run as to any claim that the fees were excessive. However, Howard Rice's appellate brief at page 12 cites *Schultz* for the proposition that "the charging of *or collection* of an excessive fee is, as a matter of law, legal malpractice." (Italics ours.) Because *Schultz* refers only to "charging an excessive and unlawful fee," we are puzzled by the

repeated assertion that one *can* assert a claim or state a cause of action for refund of unreasonable attorney fees (e.g., quantum meruit, money had and received) without also alleging malpractice is the first of a sea of red herrings beached on the pages of his briefs. The fact is Levin asserted no such independent claim, nor has he suggested any other applicable statute of limitations. (See *Stoll* v. *Superior Court* (1992) 9 Cal.App.4th 1362 [12 Cal.Rptr.2d 354] [malpractice statute cannot be circumvented by alleging "breach of fiduciary duty" by, among other things, charging unconscionable fees].)

■ Indeed, for any wrongful act or omission of an attorney arising in the performance of professional services, an action must be commenced within one year after the client discovers or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission. In all cases other than actual fraud, whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period applies. (See *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417 [173 Cal.Rptr. 917].)

■ The assertion that the statute did not begin to run until Levin paid his outstanding bills and/or until he failed to get two "dramatically different" initiatives on the ballot runs afoul of *Laird*, in which the court recognized "that the focus of section 340.6 is on *discovery* of the malpractice and actual injury, not success on appeal or proof of the total amount of monetary damages suffered by the former client." (*Laird* v. *Blacker, supra*, 2 Cal.4th at p. 614, italics in original.) As we explained in *Bennett* v. *McCall* (1993) 19 Cal.App.4th 122, 128 [23 Cal.Rptr.2d 268], "*Laird* held that it is the fact and knowledge of damage and not the amount thereof that is required to prove actual injury. . . ." (Citation omitted.) Tolling the statute while Levin attempted to qualify an untold number of additional initiatives for the ballot, or as long as he postponed paying his overdue legal bills would "allow clients, with knowledge that they have suffered actual injury, unilaterally to control the commencement of the statute of limitations and hence undermine the legislative goal of resolving cases while the evidence is fresh, witnesses are available, and memories have not faded." (*Laird* v. *Blacker, supra*, 2 Cal.4th at p. 618.)

In some cases, a client exercising reasonable diligence might not discover that the fees charged for legal services were excessive until after they were paid. In that event, the statute of limitations would be tolled until discovery.

reference to "collection." The court's emphasis on "charging" and its failure to refer to "collection," make clear it is the charging which is the triggering event.

However, that is not the case here. The statute of limitations for each of Levin's allegations of wrongful acts or omissions, including his claim he should not have to pay the full amount of the charges because the work did not confer a benefit upon him, began to run at the same time—when the trial court in the underlying action entered judgment declaring his initiative measure invalid.

The trial court properly granted summary judgment.

## III.*

. . . . . . . . . . . . . . . . . . . . . .

The awards of sanctions are reversed. In all other respects, the judgments are affirmed. The parties will bear their own costs on appeal (Cal. Rules of Court, rule 26(a)).

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied September 6, 1995, and appellants' petition for review by the Supreme Court was denied November 16, 1995. Kennard, J., was of the opinion that the petition should be granted.

*See footnote, *ante,* page 798.