Filed 4/10/13  Khodayari v. Ardalan CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BAHMAN KHODAYARI, | B239102 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC090227) |
| v. | |
| PEZHMAN CHRISTOPHER ARDALAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James Kaddo, Judge.  Affirmed in part, reversed in part.

Bahman Khodayari, in pro. per., for Plaintiff and Appellant.

Law Office of Brett W. Wolff and Brett W. Wolff for Defendants and Respondents.

This appeal arises from an action by Bahman Khodayari against Pezhman Christopher Ardalan individually and Ardalan & Associates (collectively defendants) for failing to represent him through trial in an underlying criminal matter for the flat fee of $15,000.  Plaintiff appeals from trial court orders sustaining a demurrer without leave to amend as to 15 of his causes of action on statute of limitations grounds.  He also challenges the award of summary judgment on his remaining cause of action for breach of contract.  Plaintiff argues the statute of limitations on an action for legal malpractice (Code Civ. Proc., § 340.6[1]) does not apply to 15 of the causes of action, that the causes of action did not accrue when defendants were relieved as counsel before trial of the criminal matter, and that the statutes of limitations were tolled because he was incarcerated and by the principles of equitable tolling.  On the motion for summary judgment, plaintiff argues that the court should have allowed evidence of an oral agreement which differed significantly from the terms of the written retainer agreement.

As to the causes of action to which the demurrer was sustained, we conclude that section 340.6 applies to plaintiff's causes of action other than his claims for fraud, which are governed by section 338, subdivision (d).  We also conclude that all the causes of action accrued no later than the date defendants were relieved from representing plaintiff in the underlying criminal matter.  Because that date was more than three years before this action was filed, the action is barred unless an exception or tolling applies.  Since the causes of action accrued more than one year before plaintiff was incarcerated, the tolling provisions of section 352.1 do not apply.  Nor does equitable tolling.  We shall affirm the order sustaining the demurrer.

The parol evidence submitted by plaintiff of an oral agreement was admissible within the fraud exception to the parol evidence rule, even though it contradicts the express terms of the written retainer agreement.  Under the recent decision of our Supreme Court in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit*

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Assn.* (2013) 55 Cal.4th 1169 (*Riverisland*), an issue of material fact was raised precluding summary judgment on the breach of contract cause of action. We shall reverse the summary judgment on that cause of action.

### FACTUAL AND PROCEDURAL SUMMARY

Our factual summary is taken from the allegations of the second amended complaint (the charging pleading) and the evidence presented on defendants' motion for summary judgment.

Plaintiff operated an automobile repair business. In September 2006, he was charged with 26 misdemeanor counts of grand theft, attempted extortion, insurance fraud, money laundering, and violating requirements that auto repair businesses provide written estimates and invoices and keep maintenance and repair records. On September 27, 2006, plaintiff's brothers, Mohammad and Behrooz Khodayari, met with defendants to discuss retaining them to represent plaintiff on the criminal charges. This discussion was in Farsi, the native language of the brothers and defendant Ardalan. Defendants stated that the defense, through trial (but excluding costs of investigation and an appeal, if any) would be $15,000. Plaintiff's brothers also met with other criminal defense lawyers who said the costs of defending plaintiff through trial (excluding investigation and appeal) would be between $20,000 and $30,000. All of these attorneys told the brothers that the fees would have to be paid in advance and in full.

Based on the lower fee quoted by defendants, the next day, on September 28, 2006, Mohammed entered into a written attorney retainer agreement with defendants, a copy of which was made an exhibit to the second amended complaint. He understood that the full charge for defense through trial was $15,000 excluding appeal and investigation costs. Plaintiff was expressly made a third party beneficiary of the agreement. The next day, plaintiff met with defendants and signed the retainer agreement. Based on discussion with defendants, plaintiff also understood that the $15,000 paid in advance would cover the complete cost of defense through trial, excluding investigation and appeal. Mohammed paid defendants $15,000 on

3

September 28, and plaintiff repaid him in November 2006. Defendants undertook the defense of plaintiff.

The terms of the agreement between plaintiff and defendants is disputed. Based on the oral conversations in Farsi with defendants, plaintiff and his brothers contend that the agreement was for a flat fee of $15,000 through jury trial. But the retainer agreement signed by both plaintiff and Mohammed expressly includes terms that conflict with this contention. We quote portions of those terms using the original emphasis in the agreement. It identifies Mohammed as "PRINCIPAL" and plaintiff as "CLIENT." It called for "an initial non-refundable retaining fee of $15,000. Pursuant to California Rules of Professional Conduct, Rule 4-200 CLIENT and PRINCIPAL understand and accept that the subject non-refundable retaining fee is a negotiated amount between ATTORNEY and CLIENT and the amount is not set by law, and does not include costs incurred to third parties. Notwithstanding, ATTORNEYs, as its sole option, may give CLIENT and PRINCIPAL a non-refundable credit in a sum of at least equal to the maximum rate of $300.00 per hour for the first 50 hours of work."[2]

Paragraph 5 of the retainer agreement states: "CLIENT and PRINCIPAL further understand that said retainer fee is a minimum fee and has no relationship to the actual services performed." Paragraph 6 provides that plaintiff and Mohammed would pay defendants $300 per hour for legal services under the agreement and that plaintiff would pay $100 per hour for the services of paralegals or law clerks. It also warned that the firm had not and would not "assure CLIENT and PRINCIPAL that the retainer will be the total fee nor can the firm even estimate what the total fee will be, and no promises have been made to CLIENT and/or PRINCIPAL that the fee will not exceed a certain sum. CLIENT and PRINCIPAL specifically acknowledge that ATTORNEY has made no promises about the total amount of attorney's fees to be incurred by CLIENT or

---

[2] Paragraph 5 of the agreement continues: "This fixed, non-refundable retaining fee is paid to ATTORNEY in light of the ATTORNEY's known experience, reputation and ability. In addition, and to ensure that the ATTORNEY does not represent any adverse interest or opposing party in the subject action."

4

PRINCIPAL under this agreement. Of course, the firm shall utilize its best efforts to effectuate an expeditious and amicable resolution, but such attempts may be unsuccessful, in which event it may be necessary to litigate this matter through a trial." The agreement also provides for payment of an additional deposit after exhaustion of the initial retainer of $15,000 and replenishment of the client trust account each time the balance approached $1,000.

Paragraph 13 of the agreement provides defendants could withdraw at any time as permitted under the State Bar Rules of Professional Conduct, including the failure of plaintiff to pay attorney fees or costs. There is no integration clause in the retainer agreement.

Beginning in late January 2007, defendants demanded additional money (up to $100,000), to represent plaintiff through trial. Defendants asked to withdraw from representing plaintiff, but he strongly objected because he believed he had already paid for representation through trial. At a meeting to discuss the situation, plaintiff alleges defendants threatened to share privileged information about defendant with other parties, including opposing counsel and the prosecutor in the criminal case proceeding against plaintiff. Plaintiff alleges that defendants threatened that he would have to remain in custody indefinitely if they were not allowed to withdraw, and would suffer other dire consequences. Intimidated, plaintiff offered an additional $5,000 to defendants. Defendants wrote to plaintiff, claiming that the relationship between the parties had become strained, and that they would move to be relieved as counsel. That motion was filed on February 15, 2007.

On March 1, 2007, the court in the underlying criminal case heard defendants' motion to be relieved as counsel for plaintiff based on a conflict of interest. After seeing a copy of correspondence in which the Ardalan firm demanded additional money from plaintiff, the court asked for assurances that the claimed conflict was not based on a fee dispute. Ardalan responded that he could not reveal the nature of the conflict without violating attorney-client privilege. The court asked plaintiff whether he waived that privilege for the purpose of determining the conflict of interest on which the motion to be

5

relieved was based. Plaintiff declined to waive the privilege. Since the privileged information could not be disclosed, the court granted the motion to relieve defendants. Defendants refunded $923.81 of the original $15,000 paid by Mohammed.

Plaintiff alleges he spent $34,000 on new counsel, and that he had to remain in custody for additional time because trial was delayed. He was convicted of some of the charges against him on August 1, 2008. Plaintiff was incarcerated from July 11, 2008 through June 23, 2009, and again from November 10, 2009 through December 15, 2009. While in custody, other prisoners told plaintiff that he might have a basis for suit against defendants. After his release, in 2010 plaintiff sought the advice of several attorneys regarding an action against defendants.

Plaintiff filed a complaint against defendants on June 23, 2010. He alleged causes of action for breach of contract and fraud. After defendants demurred, plaintiff filed a first amended complaint, alleging 16 causes of action. Defendants demurred on the grounds the causes of action were barred by the applicable statutes of limitations and that they were inadequately pleaded. The court overruled the demurrer to the first cause of action for breach of contract, but sustained it with leave to amend as to the remaining causes of action. Plaintiff filed his second amended complaint alleging the same sixteen causes of action. Defendants again demurred to the second through sixteenth causes of action on the grounds that they were barred by the applicable statute of limitations and did not state a cause of action. This time, the demurrer was sustained without leave to amend on the ground the causes of action were barred by the statute of limitations.

After answering the second amended complaint, defendants moved for summary judgment on the single remaining cause of action for breach of contract. Plaintiff's first ex parte application to continue the motion to allow completion of outstanding discovery was granted, but his second motion on the same ground was denied. Plaintiff filed opposition to the summary judgment motion.

The trial court granted the motion, ruling that the written retainer agreement provided for a nonrefundable retainer of $15,000 to be billed in $300 increments, and expressly stated that no promise was made about the total amount of attorney fees to be

6

charged for plaintiff's defense. The court concluded the parol evidence rule barred alteration of the written agreement by oral representations dealing with the same terms. The court also ruled the retainer agreement expressly permitted defendants to withdraw from representing plaintiff at any time allowed by State Bar rules. It concluded that defendants withdrew from the representation based on a breakdown in the attorney-client relationship. The court also ruled in favor of defendants on the alternative ground that plaintiff was collaterally estopped from claiming that the withdrawal of defendants was a breach of contract. Defendants were ordered to give notice and submit a proposed order and judgment.

Defendants submitted a proposed order granting the summary judgment motion which was signed by the trial court. That order stated that defendants were entitled to judgment as a matter of law, and that "Judgment be entered providing that Defendants ARDALAN & ASSOCIATES and P. CHRISTOPHER ARDALAN recover from Plaintiff their costs in this litigation." Plaintiff then filed a request for a statement of decision. The trial court responded that its minute order was "the ruling and order of the Court. . . ." Plaintiff filed a timely appeal.

## DISCUSSION

### I

The trial court sustained the demurrer to the second amended complaint on statute of limitations grounds with the exception of the first cause of action for breach of contract. The parties disagree about when plaintiff's claims accrued, and whether the tolling provisions of section 352.1 or equitable tolling extended the limitations period.

*A. Basic Principles*

The difficulties in bringing a demurrer based on statute of limitations grounds were discussed by the court in *Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408: "(1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the

7

cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. [Citation.] Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed. [Citation.]" (*Id*. at p. 420, fns. omitted.)

Following established standards, we take the allegations of the operative complaint as true and consider whether the facts alleged establish that plaintiff's claims are barred as a matter of law. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185 (*Aryeh*).) Since defendants are asserting a statute of limitation defense, they bear the initial burden of demonstrating that plaintiff's claims are barred by the applicable period. Thereafter, the burden shifts to the plaintiff to demonstrate that his claims survive based on one or more nonstatutory exceptions to the basic limitations period. (*Id.* at p. 1197.)

*B. Applicable Statute of Limitations*

"'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action.' [Citation.] The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies. [Citations.]" (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412.) This is a legal issue subject to de novo review. (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 (*Vafi*).)

Defendants claim that all of plaintiff's causes of action derive from the claim of legal malpractice and are barred by the one-year period of section 340.6. Based on that premise, they contend that the causes of action accrued before plaintiff was incarcerated and therefore the tolling provisions of section 352.1 (legal disability due to incarceration) do not apply. Plaintiff disagrees, arguing that he brought a number of causes of action in addition to his claim for professional negligence and that they are governed by other, longer limitations periods.

8

We first determine whether section 340.6 applies to plaintiff's causes of action as defendants contend. Section 340.6, subdivision (a) applies to "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services. . . ." (See also *Vafi*, *supra*, 193 Cal.App.4th at pp. 881–883 [applying one-year limitation period of section 340.6 to cause of action for malicious prosecution].) "In all cases other than actual fraud, whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period [section 340.6] applies." (*Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 805 (*Levin*).) This rule was applied in *Levin* to bar a lawsuit alleging various causes of action, all of which were based on professional negligence or legal malpractice. (*Id*. at pp. 804–805; see also *Callahan v. Gibson, Dunn & Crutcher* (2011) 194 Cal.App.4th 557, 567, fn. 5 [breach of fiduciary duty]; *Quintillani v. Manerino* (1998) 62 Cal.App.4th 54, 67–70 [causes of action for breach of fiduciary duty and negligent misrepresentation] (*Quintillani*).)

### 1. *Fraud Causes of Action*

Section 340.6, subdivision (a) includes an express exception for causes of action based on "actual fraud" by an attorney. The fifth, sixth, seventh, eighth, and ninth causes of action are based on fraud and deceit. The fifth cause of action for fraud alleges that defendants fraudulently promised to represent plaintiff through trial in the criminal matter for a $15,000 flat fee. The sixth cause of action for intentional misrepresentation and seventh cause of action for concealment are based on the same allegation, with the additional allegation that defendants said that the written retainer agreement would reflect the flat fee agreement. The tenth cause of action for negligent misrepresentation also is based on these two allegations. The eighth cause of action for deceit alleges that defendants "intentionally and willfully, through their fraudulent conduct, also deceived Plaintiff with the intent to induce Plaintiff to alter his position to his injury and risk." The ninth cause of action for constructive fraud alleges that defendants gained an unfair advantage over plaintiff by reason of their fiduciary relationship, and that defendants

breached that relationship.  It does not allege whether this conduct was intentional or negligent.

"One of the forms of '[a]ctual fraud' is '[a] promise made without any intention of performing it.'  (Civ. Code, § 1572, subd. 4; see *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 ['An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a written contract']; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 781, pp. 1131–1132.)"  (*Riverisland*, *supra*, 55 Cal.4th at p. 1173, fn. 3.)  The gravamen of these causes of action is that defendants promised to represent plaintiff for a flat fee in order to induce plaintiff and his brother to enter into the retainer agreement, but that they did not intend to keep that promise.  We conclude that the causes of action for fraud, intentional misrepresentation, and concealment come within the express exception of section 340.6 and are instead governed by the three-year statute of limitations for fraud.  (§ 338, subd. (d).)  Before discussing the accrual of those causes of action and any applicable tolling, we turn to the causes of action for negligent misrepresentation and constructive fraud.

These causes of action require a different analysis.  In *Quintilliani*, *supra*, 62 Cal.App.4th 54, the court held that the exception for actual fraud in section 340.6 was not intended to apply to a cause of action for constructive fraud resulting from negligent misrepresentation.  The court reasoned that a claim for constructive fraud may arise out of a breach of fiduciary duty, regardless of intent or motive, and that the Legislature intended only to except acts of actual fraud from the scope of section 340.6.  (*Id*. at pp. 69–70.)  Based on that rationale, the cause of action for negligent misrepresentation is governed by section 340.6.  As noted, plaintiff does not allege whether the cause of action for constructive fraud was based on intentional or negligent conduct.  If intentional, the conduct would come within the fraud exception to section 340.6; if negligent, it would come under section 340.6.  But as we explain below, all the causes of action accrued more than three years before the complaint was filed, and are barred by the applicable statute of limitations.

10

### 2. *Failure to Perform Services Through Trial*

The second cause of action alleges: "Defendants were improperly and unjustly enriched as a result of receiving monies for a scope of services that Defendants were unwilling to, and did not, perform in the amount of the Contract Loss." An unjust enrichment claim based on mistake or fraud is subject to the delayed discovery rule, and accrues when the aggrieved party discovers the facts constituting the fraud or mistake. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 350 (*Dintino*).)

The gravamen of the third cause of action for money had and received appears to be the same. Paragraph 48 alleges: "On or about January 29, 2007 and continuing through March 1, 2007, Defendants repeatedly defaulted on their obligations under the Agreement for monies received and owed to Plaintiff. Such amount of the Contract Loss still remains unpaid to Plaintiff and outstanding." Paragraph 21 of the complaint, incorporated by reference into the third cause of action, defines "Contract Loss" as the net amount of $14,076.19 Mohammed paid to defendants to represent plaintiff.[3]

The gravamen of these causes of action is that defendants did not perform the full scope of professional services for which they were paid. The one-year statute of limitations in section 340.6 applies to a cause of action for unjust enrichment seeking restitution of legal fees paid for allegedly deficient advice. (*Favila v. Katten Muchin Rosenman* (2010) 188 Cal.App.4th 189, 223 (*Favila*).) The same reasoning applies to plaintiff's cause of action for unjust enrichment based on failure to provide legal services under the agreement of the parties. Like the unjust enrichment claim, the gravamen of the cause of action for money had and received is that defendants were paid for legal services that they did not perform. Such a claim is governed by section 340.6. (*Levin, supra,* 37 Cal.App.4th at pp. 804–805 [cause of action for refund of legal fees constitutes claim for legal malpractice subject to section 340.6.].)

---

[3] This figure is based on the original $15,000 payment minus the $923.81 refund paid by defendants after they were relieved by the trial court.

### 3. *Breach of Implied Covenant*

The fourth cause of action is for breach of the implied covenant of good faith and fair dealing. It alleges that defendants breached the covenant and incorporates the preceding 53 paragraphs. Because it incorporates the other allegations of the complaint as the basis for this cause of action, it is based on a wrongful act or omission other than fraud in the performance of professional services and is governed by section 340.6. (*Favila*, *supra*, 188 Cal.App.4th at p. 223.)

### 4. *Negligence*

The eleventh cause of action is for negligence and the twelfth is for professional negligence. Both allege that defendants breached their duty to use ordinary care and skill. The twelfth cause of action specifically alleges that defendants had a duty to provide legal services and that in breaching that duty, defendants did not meet the standard of ordinary care, particularly by wrongfully attempting to withdraw from the criminal matter. In his opening brief, plaintiff concedes that section 340.6 applies to the twelfth cause of action. As to the eleventh cause of action, no concession is made. Instead, plaintiff argues that the statute of limitations was tolled while he was imprisoned. We conclude that both causes of action are governed by section 340.6 because they arise from professional services rendered by defendants. (§ 340.6, subd. (a).)

### 5. *Breach of Fiduciary Duty*

The thirteenth cause of action alleges that defendants breached their fiduciary duty to plaintiff, in particular by wrongfully moving to withdraw from the criminal matter and by threatening, harassing and intimidating him. He alleges that defendants' conduct was tantamount to abandonment of a client. In *Quintilliani*, *supra*, 62 Cal.App.4th 54, 68, the court concluded: "Since most claims for breach of fiduciary obligations can be restated as a claim for attorney malpractice, and since the fiduciary obligations here arose out of the attorney-client relationship, we find that section 340.6 applies to such claims." (See also *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1368; *Levin*, *supra*, 37 Cal.App.4th at p. 805.) We agree with this analysis and conclude section 340.6 applies.

12

*6. Intentional Infliction of Emotional Distress*

The fourteenth cause of action for intentional infliction of emotional distress is based on allegations that defendants threatened, intimidated, and harassed plaintiff regarding their desire to withdraw from representing plaintiff in the criminal matter. Section 340.6 applies to all causes of action arising from an attorney's provision of professional services other than actual fraud, including tort theories. (*Levin*, *supra*, 37 Cal.App.4th at p. 805.) Section 340.6 applies to this cause of action.

*7. Abuse of Process*

The fifteenth cause of action alleges that "on January 28, 2007, and again on or about March 1, 2007, Defendants acted intentionally and willfully using the legal process to threaten, intimidate and harass Plaintiff as stated herein. [¶] . . . The purpose of such conduct by Defendants was in furtherance of the desire of Defendants to withdraw from representation of Plaintiff in the Criminal Matter or otherwise obtain additional monies from Plaintiff. [¶] . . . As a result of such abuse of process by Defendants, Plaintiff suffered injuries and damages, including Contract Loss, being compelled to retain new counsel, expending Additional Fees and incurring Emotional Loss and Income Loss."

"'The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed.' (*Rusheen v. Cohen* [(2006)] 37 Cal.4th [1048,] 1056.) 'To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings.' (*Id.* at p. 1057.)" (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1522.)

The rationale of *Vafi*, *supra*, 193 Cal.App.4th 874 is instructive. In that case, the court concluded that the one-year limitation period of section 340.6 applied to a cause of action for malicious prosecution. It reasoned: "There is no language in the statute which exempts malicious prosecution claims from the limitations period. We are not persuaded by Vafi's argument that the Legislature was required to amend the statute to expressly add malicious prosecution to the reach of the statute. Indeed, 'if exemptions are specified

13

in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.' [Citation.]" (*Id*. at p. 881.) The court rejected the plaintiff's argument that section 340.6 means "malpractice" when it refers to "'a wrongful act or omission.'" (*Id*. at p. 882.) It held: "If the Legislature wanted to limit the reach of section 340.6 to malpractice actions between clients and attorneys, it could easily have done so. Absent express legislative intent that it meant . . . malpractice when it referred to a wrongful act or omission, we are left only to interpret the plain meaning of the words in the statute. [Citation.] In any event, courts have consistently applied section 340.6 to various tort and contract actions. [Citations.]" (*Id*. at pp. 882–883.)

We agree with the *Vafi* court that the broad language of section 340.6 was intended by the Legislature to encompass all tort actions other than actual fraud, including abuse of process. Section 340.6 applies to this claim.

### 8. *Unfair Business Practices*

The sixteenth cause of action alleges that defendants "engaged in unlawful, unfair and fraudulent business practices as stated herein" in violation of Business and Professions Code section 17200 et seq. (the unfair competition law). Plaintiff alleges the business practices caused him to suffer damages when he was compelled to retain new counsel and pay additional attorney fees, as well as incurring emotional and income loss. This cause of action repackages plaintiff's allegations against defendants based on "wrongful acts or omissions arising in the performance of professional services" (§ 340.6, subd. (a)) and therefore comes within the one-year limitations period.

In summary, we conclude that the one-year period of section 340.6, subdivision (a) applies to each of plaintiff's causes of action with the exception of the fifth through seventh causes of action for fraud, and the ninth cause of action for constructive fraud because that cause of action does not allege whether the conduct of the defendants was intentional or negligent. As we explain next, the uncertain gravamen of the ninth cause of action makes no difference because whether based on intentional or negligent conduct, all the causes of action accrued at the same time and are therefore barred by the applicable limitations period.

14

*C. Accrual*

We begin with accrual under section 340.6 because it governs most of the causes of action. "'It is well settled that the one-year limitations period of section 340.6 "'is triggered by the client's discovery of "the facts constituting the wrongful act or omission," not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action."'"' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685.)" (*Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1146–1147.)

As he alleges, plaintiff discovered that defendants did not intend to represent him for a flat fee of $15,000 in January 2007 when defendants demanded additional payment to continue with the defense. At the latest, he discovered the basis for his claims when defendants were relieved as counsel by the trial court in the criminal matter on March 1, 2007. The same time frame applies to his claims of intimidation and harassment, which allegedly occurred from January 2007 through March 1, 2007. Plaintiff filed his original complaint more than three years later, on June 23, 2010.

The discovery rule of accrual applies to the fraud causes of action as well under section 338, subdivision (d). "'[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim.' [Citation.] Thus, for example, the statute of limitations in a cause of action for fraud 'commences to run after one has knowledge of the facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry . . . .' [Citations.]" (*Cleveland v. Internet Specialties West, Inc.* (2009) 171 Cal.App.4th 24, 31.) Thus plaintiff had knowledge that defendants did not intend to represent him through trial before March 1, 2007 when they were relieved as counsel.

Plaintiff argues that his claims did not accrue until he "had a reasonable basis or opportunity to discover claims against Defendants" and that he "did not reasonably

15

discover that he had any legal basis for claims against Defendants until late 2009, after he was released from incarceration." He contends: "As a lay person under criminal charges in 2007 and 2008, Plaintiff did not have access to legal resources or even the records of his own case with Defendants (for example, Plaintiff only obtained in late 2009 a copy of the transcript from the date when Defendants withdrew from representation of Plaintiff in 2007) to be able to identify the wrongdoing." This argument is contrary to the rule that the cause of action accrues when the plaintiff knows the factual basis for his claim, not when the plaintiff appreciates the legal theories or remedies that might be pursued.

Plaintiff cites *Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 171, for the proposition that as a criminal defendant he was not likely to discover his cause of action against his former counsel until another lawyer reviewed that lawyer's conduct. But the basis for the malpractice action in *Bledstein* was a claim that the plaintiff's attorney committed malpractice by advising him to plead guilty to a narcotics charge. In contrast, in this case, the basis for plaintiff's claim was easily discovered—defendants took the position that the $15,000 paid was only a retainer and not a flat fee for defense through trial. That is the time that plaintiff must have understood that he was wronged, and therefore is the time he knew or should have known that a cause of action might be available against the defendants under these circumstances.

Thus, all of plaintiff's causes of action were time-barred because they were brought after the applicable statute of limitations had expired, unless the relevant periods were tolled.

## D. Tolling Under Section 352.1

Plaintiff invokes the tolling accorded a person who is incarcerated for all or a portion of the limitations period. Section 352.1 allows a person who "is, *at the time the cause of action accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, . . ." a maximum of two years

16

tolling.[4]  (Italics added.)  (*Rose v. Hudson* (2007) 153 Cal.App.4th 641, 648, fn. 6.)  It runs from the date of sentencing.  (*Carlson v. Blatt* (2001) 87 Cal.App.4th 646, 650.)  The second amended complaint alleged that plaintiff was incarcerated from July 11, 2008 through June 23, 2009, and again from November 10, 2009 through December 15, 2009, a period of 363 days.  Under section 352.1, the limitations period applicable to each of plaintiff's causes of action would have been extended by 363 days, but only if the cause of action accrued while he was incarcerated.  As we have discussed, all of plaintiff's claims accrued no later than March 1, 2007, before he alleges he was incarcerated.  Since appellant was not incarcerated when his causes of action accrued, the tolling provision does not apply.

### E.  Equitable Tolling

Plaintiff claims that the limitations period was extended by equitable tolling.  The principles of equitable tolling do not apply to an action governed by section 340.6.  (*Gordon v. Law Offices of Aguierre & Meyer* (1999) 70 Cal.App.4th 972, 979–980.)

We next consider whether equitable tolling extended the period in which plaintiff could bring his fraud causes of action.  "'Equitable tolling is a judge-made doctrine "which operates independently of the literal wording of the Code of Civil Procedure" to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.  [Citations.]" (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 911.)  Plaintiff bears the burden of proving that this doctrine applies.  (*Id.* at p. 912.)  In his opposition to the demurrer, plaintiff did not argue equitable tolling.[5]  Because he did not, it was not preserved for appeal.  (*Ibid.*)

---

[4] Section 352.1, subdivision (a) provides in pertinent part:  "If a person entitled to bring an action . . . is, *at the time the cause of action accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."  (Italics added.)

[5] The only reference to "equity" in plaintiff's opposition to the demurrer is his argument that "[t]he Court should consider equitable considerations in its review of the

17

Even if we were to consider the merits of the argument, plaintiff has failed to plead the prerequisites for its application. "'To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts. [Citations.]' (*Federal Election Com'n v. Williams* (9th Cir. 1996) 104 F.3d 237, 240–241.)" (*Sagehorn v. Engle* (2006) 141 Cal.App.4th 452, 460–461.) As we have discussed, plaintiff became aware of the operative facts regarding defendants' refusal to defend him for a flat fee of $15,000 and their alleged efforts to intimidate and harass him, no later than March 1, 2007. The doctrine of equitable tolling does not apply under these circumstances.

The complaint in this action was filed after the limitations periods of section 340.6 and 338, subdivision (d) had expired. Those periods were not extended by tolling under either section 352.1 or equitable tolling. The demurrer to the second through sixteenth causes of action was correctly sustained. Although plaintiff argues he should have been granted leave to amend, he has not presented any supported basis to avoid the bar of the statute of limitations.

II

Plaintiff argues he raised triable issues of material fact precluding summary judgment on the cause of action for breach of contract. That cause of action alleges that defendants repeatedly assured plaintiff that the entire cost of defense through jury trial would be $15,000. He alleges that beginning on January 29, 2007 (when the fee dispute began) through March 1, 2007 (when defendants were relieved as counsel), defendants "defaulted with respect to providing services and legal representation to Plaintiff through

Demurrer, and should consider that as professional attorneys in a position of trust and confidence vis-à-vis Plaintiff (a lay person, indigent and of little English-speaking ability), the oppressive and fraudulent conduct of Defendants (as alleged in the SAC) should not operate to deprive Plaintiff of the ability to bring forth the merits of his case before the Court."

18

the conclusion of a jury trial in the Criminal Matter." He also alleged defendants breached section 4 of the agreement which obligated them to reasonably represent him in the criminal matter.

Defendants' motion for summary judgment contended that there was no breach of contract because Ardalan's motion to withdraw was consistent with the terms of the agreement and Rules of Professional Conduct. They also argued that plaintiff's allegations of oral representations contrary to the terms of the written agreement could not be the basis for a breach of contract claim under the parol evidence rule. In his opposition and separate statement of disputed facts, plaintiff contradicted these contentions, submitting declarations by himself and his brothers regarding their understanding, based on oral representations by defendant Ardalan in Farsi, that the charge for defense of the criminal charges through trial was a flat fee of $15,000 (excluding costs of investigation and appeal). Based on this evidence, plaintiff took the position that the written retainer agreement did not memorialize the actual agreement of the parties because it provided for billing beyond an initial $15,000 retainer payment.

"'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation.] We review the trial court's decision de novo, determining independently whether the facts not subject to dispute support summary judgment. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Doubts are resolved in favor of the party opposing the judgment, and we are not bound by the trial court's reasons for the summary judgment ruling. [Citations.]" (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 567.)

A. *Parol Evidence*

"The parol evidence rule is codified in Code of Civil Procedure section 1856 and Civil Code section 1625. It provides that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343 (*Casa Herrera*).) 'An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement.' (Rest.2d Contracts, § 209, subd. (1); see *Alling v.*

19

*Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433.)" (*Riverisland*, *supra*, 55 Cal.4th at p. 1174.)

Although the written retainer agreement did not include an express integration clause, there was partial integration as to the terms of payment to defendants. "An integration may be partial as well as complete. In other words, the parties may intend a writing to finally and completely express certain terms of their agreement rather than the agreement in its entirety. [Citation.] When only part of the agreement is integrated, the parol evidence rule applies to that part." (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 953–954.)

Whether an integration was intended is a question for the court to decide which we independently review. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 352–353.) "A writing may, but need not, expressly state that it is intended as an integration. [Citation.] In addition to the terms of the writing, a court should also consider the surrounding circumstances, including prior negotiations, and the nature of the purported collateral agreement to determine whether it is reasonable to conclude that the collateral agreement was intended to be part of the bargain. [Citation.]" (*Id.* at p. 353.) In light of the extensive, and detailed provisions of the retainer agreement regarding fees, we conclude it was intended to be an integration.

A fraud exception to the parol evidence rule is codified at section 1856, subdivision (g): "This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity, or otherwise interpret the terms of the agreement, *or to establish illegality or fraud*." (Italics added.)

In *Riverisland*, the Supreme Court overruled *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258 (*Pendergrass*). *Pendergrass* had limited the fraud exception to the parol evidence rule by requiring that evidence offered to prove fraud "must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and *not a*

*promise directly at variance with the promise of the writing*." (*Id.* at p. 263, italics added.) Characterizing *Pendergrass* as "an aberration," the Supreme Court "reaffirm[ed] the venerable maxim stated in *Ferguson v. Koch* [(1928)] 204 Cal. [342,] 347: '[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.'" (*Riverisland*, *supra*, 55 Cal.4th at p. 1182.)

In *Riverisland*, the plaintiffs alleged they negotiated an agreement to restructure their debt to a production credit association. They alleged that the representative of the credit association told them that their loan would be extended for two years in exchange for additional collateral consisting of two ranches. These assurances were repeated when they signed the restructuring agreement, which they signed where tabbed for their signatures without reading it. But the agreement actually provided for only three months forbearance and identified eight parcels as additional collateral. (*Riverisland*, *supra*, 55 Cal.4th at p. 1173.) The plaintiffs sued for fraud, negligent misrepresentation, rescission and reformation of the restructuring agreement. The trial court granted summary judgment on the ground that the fraud exception to the parol evidence rule did not allow admission of promises at odds with the terms of a written agreement. (*Ibid.*) The gravamen of the plaintiffs' causes of action was that the written restructuring agreement did not reflect the actual agreement between the parties.

At oral argument, counsel for defendants argued that *Riverisland* has no application here because plaintiff does not challenge the validity of the contract, but instead seeks to modify its terms to reflect an oral understanding. We do not read *Riverisland* so narrowly. As in that case, here the gravamen of the breach of contract cause of action is that the written retainer agreement does not memorialize the actual agreement reached between plaintiff and defendants. Plaintiff's claim is that he had an agreement with defendants to receive representation through trial for a flat fee of $15,000 but that defendants breached that agreement by preparing a written retainer agreement contrary to this agreement and then refusing to represent him through trial for $15,000. This is a viable cause of action even though the separate causes of action for fraud and misrepresentation are barred by the statute of limitations. Under the reasoning of

21

*Riverisland*, parol evidence was admissible to raise a triable issue of material fact as to whether defendants agreed to represent plaintiff through trial for the $15,000 flat fee or whether the written retainer agreement memorialized the actual agreement of the parties.

In opposition to summary judgment, plaintiff submitted the declarations of his brothers Mohammed and Behrouz, which were identical.[6] We liberally construe plaintiff's evidence under the rules governing summary judgment. (*Theiler v. Ventura County Community College Dist.* (2011) 198 Cal.App.4th 852, 857.) The declarations state that, based on the respective declarants' conversation with defendant Ardalan in Farsi, "he made us believe he will represent until one jury trial for $15,000.00, he said other costs such as investigation is not part of $15,000.00 (his fees). He wanted the money up front, same as others . . . ." A reasonable inference from these declarations is that defendant Ardalan represented to plaintiff's brothers that he would defend plaintiff through the criminal trial for a flat fee of $15,000, payable in advance, exclusive of investigation and appeal.

Under the rule of *Riverisland*, this was admissible and sufficient evidence to raise a triable issue of material fact as to whether defendants breached the agreement of the parties by demanding more than $15,000 to represent plaintiff through the criminal trial. Summary judgment must be reversed on this ground.

Defendants also argue that they were entitled to summary judgment because plaintiff was collaterally estopped to claim the agreement was breached by their wrongful withdrawal in the criminal trial. They claim that this issue was decided by the criminal court, which granted their motion to be relieved as counsel.

We disagree. "'"'The prerequisite elements for applying the doctrine [of collateral estoppel] to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and

---

[6] Plaintiff also refers to his own declaration submitted in opposition to the motion for summary judgment, but it is not in the record on appeal.

22

(3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.""' (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797, italics omitted.)" (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 770.) The issue raised here, whether defendants' withdrawal constituted a breach of the agreement with plaintiff is not identical to the issue before the criminal court, which was whether to relieve defendants from representing plaintiff in the criminal matter. Collateral estoppel does not apply.

In opposition to the motion for summary judgment, and on appeal, plaintiff asserted that the contract contained unconscionable terms. This argument was inconsistent with the allegations of the complaint, which had no cause of action based on unconscionability. For that reason, we do not reach this argument.

Since we conclude that the summary judgment on the breach of contract cause of action must be reversed in light of *Riverisland*, *supra*, 55 Cal.4th 1169, we need not and do not reach plaintiff's arguments regarding the trial court's refusal to grant a second continuance of the summary judgment motion to allow further discovery. Since *Riverisland* was decided while this case was on appeal, the trial court did not have an opportunity to determine its impact on the timeliness of the breach of contract cause of action. It may do so on remand.

## DISPOSITION

The order sustaining the demurrer to the second through sixteenth causes of action of the second amended complaint is affirmed. Summary judgment in favor of defendants is reversed. Each side is to bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                        EPSTEIN, P. J.
We concur:


WILLHITE, J.                        MANELLA, J.

23