Filed 7/21/15  Smith Lillis Pitha LLP v. Colburn CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SMITH LILLIS PITHA LLP, | B255321 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC481084) |
| v. | |
| PAMELA COLBURN, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Affirmed.

Law Office of Kent M. Bridwell and Kent M. Bridwell for Defendant and Appellant.

Lillis Pitha and Martin L. Pitha for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant and Appellant Pamela Colburn appeals from a judgment resulting from the trial court granting Plaintiff and Respondent Smith Lillis Pitha LLP's (the Firm) motion for summary adjudication and denying Colburn's request for leave to file a cross-complaint. We affirm summary adjudication because the Firm met its burden by proving that Colburn breached her contract with the Firm by failing to pay for the work the Firm performed for her. Colburn failed to make competent objections to the evidence supporting summary adjudication below and failed to proffer evidence to show that a triable issue of material fact exists as to a cause of action or a defense. We also conclude that the court did not err in correcting its order granting summary adjudication to accurately reflect the principal and interest owed by Colburn. Lastly, the court properly denied leave to file the cross-complaint, as all of Colburn's causes of action were time-barred.

# FACTS AND PROCEDURAL BACKGROUND

Colburn was a defendant in two lawsuits, which we refer to as Milbank and Maranon. Colburn hired the Firm to represent her in the Maranon matter in March 2009, and in the Milbank matter in July 2009. In March 2010, the trial court issued a judgment against Colburn in the Maranon matter in the amount of $998,941.87. Colburn then substituted the Firm out of the Maranon litigation in March 2010, and out of the Milbank litigation in April 2010. Throughout the Firm's representation of Colburn and thereafter, the Firm sent her invoices with detailed statements of amounts owed for the Firm's services. Colburn partially paid the invoices and in March 2010, at the conclusion of the Firm's representation of Colburn in the Maranon matter, she owed the Firm approximately $220,000 for the Firm's work in the Maranon matter.

In March 2012, the Firm brought the present lawsuit for breach of contract and common counts to recover debts owed by Colburn to the Firm for its work on both Milbank and Maranon cases. Colburn answered in August 2012. In February 2013, Colburn moved for leave to amend her answer and file a cross-complaint, alleging breach of contract premised on malpractice and breach of fiduciary duty. The trial court denied her request because the statute of limitations had run on her proposed cross-complaint.

The Firm moved for summary adjudication on its breach of contract and common count claims with respect to the Maranon matter. The motion was based on a declaration by a partner of the Firm, the engagement agreement between the Firm and Colburn that was signed by Colburn, and the Firm's invoices sent to Colburn. Colburn's opposition to the motion focused on objections to the Firm's evidence; Colburn did not provide evidence in opposition. The Court found that the Firm proved a prima facie case for breach of contract and common counts on summary adjudication and Colburn failed to show that there was a triable issue of material fact. The court issued an order granting summary adjudication in favor of the Firm, but the order contained an erroneous calculation of the interest on the damages. The court subsequently corrected its interest calculation and issued a corrected ruling on the Firm's motion for summary adjudication. The Firm moved to dismiss its claims related to the Milbank litigation and the Court entered judgment against Colburn. We discuss the facts in further detail below as necessary.

## DISCUSSION

### I.    *Summary Adjudication was Proper*

Colburn asserts that the court erred in granting summary adjudication because the Firm failed to produce sufficient evidence to prove the elements of its causes of action for breach of contract. Colburn specifically argues that the evidence establishing the Firm's prima facie case is inadmissible. Colburn also asserts that the Firm failed to make a prima facie case for their common count claim and failed to disprove Colburn's affirmative defenses.

3

"We review the grant of summary adjudication de novo." (*King v. Wu* (2013) 218 Cal.App.4th 1211, 1213.) "In performing this de novo review, we view the evidence in the light most favorable to the opposing party and strictly construe the evidence of the moving party, and resolve any evidentiary doubts in favor of the opposing party." (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 574.) A motion for summary adjudication is granted where the motion entirely disposes of a cause of action. (Code Civ. Proc.,[1] § 437c, subd. (f)(1).) "A plaintiff ... has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. Once the plaintiff or cross-complainant has met that burden, the burden shifts to the defendant or cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The defendant or cross-defendant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (§ 437c, subd. (p)(1).) " 'Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law. [Citation.]' " (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1416.)

### a.     The Breach of Contract Claim

The Firm had the burden of proving the four elements of a cause of action for breach of contract: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Through partner James Smith's declaration and documentary evidence, the Firm established each of these elements.

---

[1]     All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

## 1. *Existence of a Contract*

In support of the motion for summary adjudication, Smith, a partner at the Firm, attested that Colburn hired the Firm to represent her in the Maranon case. Attached to his declaration was a copy of the March 2009 engagement agreement between the Firm and Colburn, signed by Colburn. Smith verified in his declaration that this was a true and correct copy of the engagement agreement. That agreement specifically stated that the Firm was to represent Colburn in the litigation with Maranon, stated the scope of the engagement, and set forth the Firm's hourly fees and cost allocation. Smith also attached billing entries to his declaration that show Smith was involved in representing Colburn. The entries document Smith's interaction with Colburn that led to the engagement agreement, stating that Smith had a "[l]engthy meeting with . . . Colburn discussing Maranon and related litigation" and that Smith conferred with Colburn regarding the Firm's role in substituting as her new counsel in the Maranon case. This evidence proved the existence of the contract between Colburn and the Firm.

Colburn asserts on appeal that Smith lacked the requisite personal knowledge to assert facts within his declaration. Colburn failed to argue that Smith lacked personal knowledge in her opposing papers or at the hearing. Pursuant to Code of Civil Procedure section 437c, subdivisions (b)(5), (c) and (d), evidentiary objections not made in writing before the hearing or in person at the hearing are deemed waived. (See *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 764 ["[F]ailure to make a coherent argument in support of the objection should be viewed as an abandonment of that objection."]; *Collin v. CalPortland Company* (2014) 228 Cal.App.4th 582, 598 [failure to object to the movant's use of a special interrogatory answer or deposition testimony summary judgment papers or at the hearing on the motions forfeits evidentiary objections].) "In determining whether a triable issue was raised or dispelled, we ... must consider any evidence to which no objection, or an unsound objection, was made." (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 957, citing *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 (*Reid*).)

5

Colburn therefore waived this objection. The trial court properly concluded that the Firm met its burden as to this element.

### 2.    *The Firm's Performance*

Smith also attested that the Firm represented Colburn in both the Maranon and Milbank matters and prepared invoices reflecting the Firm's services to Colburn. Smith attached the invoices to his declaration and attested that they were true and correct copies of the invoices. The invoices, spanning 140 pages, provided a detailed account of services rendered to Colburn. Smith also stated that "[w]e delivered these invoices for our work to Colburn, in addition to regular discussions concerning handling of [the Maranon and Milbank] lawsuits." This evidence showed that the Firm performed its portion of the contract by representing Colburn in the Maranon and Milbank matters.

Colburn asserts that Smith failed to demonstrate that he had personal knowledge to attest to the work the Firm employees (other than Smith himself) performed for Defendant or to the invoices accompanying his declaration. Colburn argues that the invoices are inadmissible hearsay documents. Colburn also disputes the reasonableness of the Firm's billing and the Firm's charging of expenses for travel. Yet, Colburn failed to raise these objections below. Because Colburn failed to object to admission of the invoices and failed to make a competent objection to Smith's declaration on these issues, we conclude that the Firm provided sufficient evidence to prove its performance under the contract.

### 3.    *Colburn's Breach and Resulting Damages.*

Lastly, Smith attested that Colburn owed the Firm more than $220,000 before the addition of interest and other costs for work performed by the Firm on Colburn's behalf in 2009 and 2010 in connection with the Maranon lawsuit. The invoices document these charges in detail. Moreover, after removing the Firm and obtaining new counsel, Colburn testified under oath in a deposition in the Maranon litigation that she owed the firm about $300,000. This evidence shows that Colburn breached the contract by failing to pay for the Firm's services and that the Firm's damages amounted to about $220,000 prior to the calculation of interest and other costs.

6

Colburn argues that her testimony regarding her debt to the Firm is inadmissible because Smith's verification of Colburn's prior deposition testimony was not based on personal knowledge as Smith was not present at that deposition, nor was Smith involved in that litigation. Defendant asserts that because she was not specifically identified on the cover page of the deposition transcript as a party in the case she had given testimony in, "it is impossible to determine which Evidence Code provision would apply as between section 1291 and section 1292, and there are different requirements for admissibility under each." We note that Colburn's testimony is not necessary to prove her breach and the damages, as the unpaid invoices and Smith's declaration satisfy those elements. Furthermore, Colburn failed to competently make these objections below and thus waived them. We shall not set aside the court's findings based on the erroneous admission of evidence unless, "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (Evidence Code § 353(a).) The Firm thus proved the final elements of breach and damages.

Since all of the elements of the breach of contract claim were proven by the Firm, and Colburn failed to produce evidence showing there was a triable issue of material fact as to an element of breach of contract or a defense, we affirm the court's summary adjudication as to the breach of contract claim.

b.    **Waiver of Evidentiary Objections**

The focus of this part of the appeal is the evidentiary objections to the Firm's evidence provided in support of its motion for summary adjudication. Our affirmance of summary adjudication is premised on Colburn's waiver of those objections. In her reply brief, Colburn argues that pursuant to *Rincon v. Burbank Unified School Dist.* (1986) 178 Cal.App.3d 949, 954-955 (*Rincon*), a party cannot waive objections to inadmissible evidence. This is a mischaracterization of the current state of the summary adjudication and summary judgment law. We note that the rule referenced by Colburn, that there can be no waiver of the right to object to incompetent evidence, was stated in *Witchell v. De Korne* (1986) 179 Cal.App.3d 965 (*Witchell*) and *Zuckerman v. Pacific Savings Bank*

(1986) 187 Cal.App.3d 1394 (*Zuckerman*). *Zuckerman* relied on *Witchell* for the proposition that "there can be no waiver of the right to object to matters inadmissible by virtue of incompetency . . . ." (*Zuckerman,* at p. 1404.) *Witchell* observed that even under certain amendments to the summary judgment statute, the moving party's burden "to make a proper showing" was not eased because "the Legislature retained the mandatory language regarding the manner in which the motion was to be supported." (*Witchell,* at p. 974, italic omitted.) In 1990, the Legislature overruled these principles, as clarified by the Supreme Court in *Reid, supra,* 50 Cal.4th at pp. 529-530.

In *Reid, supra,* 50 Cal.4th at pages 529-530, the Supreme Court explained that in 1990, the Legislature changed the section 437c, subdivision (b) "to its current form, providing that, 'Evidentiary objections *not made at the hearing* shall be deemed waived.' (§ 437c, subd. (b), italics added, as amended by Stats. 1990, ch. 1561, § 2, pp. 7330-7331, enacting Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as amended May 7, 1990.)" In *Reid*, the Supreme Court stated that one purpose of the 1990 amendment "was to 'overturn[ ]' two Court of Appeal cases holding that the competency of witnesses could be challenged for the first time on appeal. [Citations.]" (*Reid,* at p. 530.) Providing numerous citations to legislative history, the Court stated that this objective was evidenced by the Legislature's express declaration that: " 'It is the intent of this legislation to provide that all objections to the form and substance of the moving and opposing papers shall be first made in the trial court and not on appeal by the parties or by the appellate court and to expressly overrule the rules stated in [*Witchell*] and [*Zuckerman*].' [Citation.] The overall purpose of the bill was 'to make the summary judgment procedure more efficient and to reduce the opportunity for abuse of the procedure.' [Citations.]" (*Reid,* at p. 530.)

Thus, the line of case law stating that waiver of evidentiary objections does not apply to inadmissible evidence, which was applied by *Rincon, supra,* 178 Cal.App3d at pp. 954-955, was abrogated by legislative amendment in 1990, as expressly recognized by the Supreme Court. We therefore do not address any evidentiary objections not raised

8

below by Colburn. As described above, Colburn failed to provide competent objections to the Firm's evidence and thus, we affirm summary adjudication.

### c. The Common Count Claim

Defendant argues that the Firm failed to present any evidence in the motion for summary adjudication as to the common count. "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory. [Citations.] When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable. [Citations.]" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394–395.) Meaning, the common count "must stand or fall on the viability of plaintiffs' other claims." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1560.) "The essential allegations of a common count 'are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.'" (*Allen v. Powell* (1967) 248 Cal.App.2d 502, 510.)

The evidence discussed above not only proves the elements of a breach of contract claim but also proves the common count claim which is simply an alternative way of seeking the same damages as sought under the contract claim. The invoices and the declaration establish the Firm's work performed for Colburn, and Colburn's indebtedness and nonpayment. We therefore affirm the court's summary adjudication as to the common count claim as well.

### d. Defendant's Affirmative Defenses

Colburn asserts that reversal is required because the Firm failed to refute Colburn's affirmative defenses. Yet, the Firm was not required to disprove the affirmative defenses in order to meet its burden on summary adjudication. "Summary judgment law in California 'no longer requires a plaintiff moving for summary judgment to disprove any defense asserted by the defendant as well as prove each element of his

9

own cause of action.' [Citation.] It is sufficient for a plaintiff to prove each element of the cause of action." (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1321; section 437c, subdivision (p)(1), ["A plaintiff or cross-complainant has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. Once the plaintiff or cross-complainant has met that burden, the burden shifts to the defendant or cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."].) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.)

The Firm never carried the burden to disprove Colburn's affirmative defenses. After the Firm made its prima facie case, the burden shifted to Colburn to produce evidence of a triable issue of one or more material facts regarding one of the elements of the causes of action, or show that she had a viable defense. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) Colburn did neither, and thus summary adjudication was proper.

## II.    *Corrected Order*

Colburn asserts that the court erred in issuing an order that corrected the amount of damages awarded to the Firm in the court's initial ruling on the Firm's motion for summary adjudication. The original order stated that "[a]s to damages, the [c]ourt grants the [Firm] damages in the amount of $253,482.67, which includes the interest. The [Firm] is ordered to give a breakdown between the principal and interest." This amount appears to have come from an October 2011 invoice prepared by the Firm. This invoice was issued two years prior to the motion for summary adjudication and excluded two years worth of interest that accumulated prior to summary adjudication. Per the court's request, the Firm itemized the principal and interest owed. Based on these updated numbers and the breakdown provided to the court, the Firm requested the court enter judgment based on the accurate sum owed to the Firm. The court then issued a corrected order and rendered judgment, awarding the Firm $299,792.63 in damages with an

10

additional $59.95 per day thereafter from November 27, 2013. This was based on a principal of $219,698.59 and an interest rate of 0.833% for a period of 1,336 days.

On appeal, Colburn asserts that "[i]n effect, what the court did was allow [the Firm] to submit additional evidence in support of summary adjudication after a ruling on the motion had been made." (Italics omitted.) We disagree. No additional evidence contributed to the court's corrected order. The $219,698.59 principal was based on the March 31, 2010 invoice (submitted in support of summary adjudication) as March 2010 was the last month the Firm represented Colburn. Colburn's engagement agreement with the Firm, which was also provided in support of summary adjudication, provided the 0.833% interest rate. Lastly, the days were calculated from the date of the invoice to the date of the motion for summary adjudication hearing. In responding to the court's request for an accounting of the principal and interest, the Firm did not assert any new substantive arguments or new evidence regarding the underlying claim.

Furthermore, the court's corrected order is consistent with the "court's authority to reconsider its prior interim rulings on its own motion." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105.) We therefore affirm.

### III.    *The Court Properly Denied Leave to File the Cross-Complaint as It Was Time-Barred*

Colburn argues that the court erred in denying her leave to file a cross-complaint.[2] When a defendant, who fails to timely file a cross-complaint, applies to the court for leave to file a cross-complaint, "[t]he court, after notice to the adverse party, shall grant, upon such terms as may be just to the parties, leave to . . . to file the cross-complaint . . . if the party who failed to plead the cause acted in good faith." (Code Civ.

---

[2]    We note that on appeal, Colburn states that this was a motion for leave to file an amended answer and cross-complaint. Yet, the parties only provide analysis of the request for leave to file the cross-complaint. We therefore only address this aspect of Colburn's motion on appeal. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 [On appeal, "the party asserting trial court error may not ... rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]"].)

11

Proc., § 426.50.) "The provision in section 426.50 relating to 'good faith' does allow trial courts a 'modicum of discretion' in allowing amendments to cross-complaints. [Citation.] Nonetheless, what constitutes 'good faith' must be determined in conformity with the liberality conferred upon the trial courts by the section and by prior law. [Citation.] '[T]his principle of liberality requires that a strong showing of bad faith be made in order to support a denial of the right to file a cross-complaint under this section.' [Citation.]" (*Sidney v. Superior Court* (1988) 198 Cal.App.3d 710, 718.)

At issue is whether Colburn acted in good faith when seeking leave to file the cross-complaint. On February 8, 2013, Colburn filed a motion for leave to file a cross-complaint for breach of contract, breach of fiduciary duty, rescission and restitution. Colburn's claims were based on legal malpractice. Her cross-complaint alleged that the Firm "breached the terms [of] its agreement(s) by violating the Rules of Professional Conduct of the State Bar of California, contrary to the express terms of its agreement(s)," breached the contract by improperly using the retainer and trust account monies, breached the contract by filing a notice of motion to be relieved as counsel with false or privileged statements, violated its fiduciary duty as legal counsel to Colburn, and failed to explain the retainer contract to Colburn. In its written decision denying leave to file Colburn's proposed cross-complaint, the court concluded that Colburn acted in "bad faith in alleging claims barred by the Statute of Limitations." We agree that each cause of action was barred by the one-year statute of limitations for legal malpractice claims.

"In all cases other than actual fraud, whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period applies." (*Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 805; *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 430 ["attorney-client fee disputes and legal malpractice claims fall within the same statute of limitations, Code of Civil Procedure section 340.6."]; *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1368 [One-year limitation period for legal malpractice, rather than four-year "catch-all" limitations period, applied to client's claim against attorney for breach of fiduciary duties.].) Pursuant to section 340.6(a), "[a]n action against an

12

attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

Here, the Firm began representing Colburn in March 2009 in the Maranon matter, and in July 2009 in the Milbank matter. A year later, the trial court issued a judgment against Colburn in the Maranon matter in the amount of $998,941.87. Colburn then substituted the Firm out of the Maranon litigation in March 2010, and out of the Milbank litigation in April 2010. In addition, on January 31, 2011, Colburn's then-attorney phoned Smith to request that the Firm enter into a tolling agreement for any claims Colburn may have against the Firm. Smith attested in a declaration attached to the Firm's opposition to the motion for leave to file the cross-complaint, that "[d]uring the phone call, [Colburn's attorney] made it clear that he had spoken with his client about the tolling agreement and the basis for such an agreement prior to contacting [Smith]." The Firm did not agree to the tolling agreement. Smith documented this conversation shortly after the phone call in an email to two partners in his firm. During the phone conversation, Colburn's attorney divulged that Colburn had thought she might have claims against the Firm and had requested the attorney contact the Firm regarding a tolling agreement.

This evidence demonstrates that Colburn may have had notice of her malpractice claims as early as March 2010, when judgment was entered against her in the Maranon matter, but Colburn certainly was aware of her claims against the Firm by January 2011, based on her request for a tolling agreement. Colburn nonetheless waited two years to file the cross-complaint. We therefore conclude that her malpractice claims were barred by the one-year statute of limitations.

The court properly denied her request for leave to file the cross-complaint, as it was time-barred.

13

## DISPOSITION

The judgment and orders are affirmed. Plaintiff and Respondent Smith Lillis Pitha LLP is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, Acting P. J.

I concur:


ALDRICH, J.


EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.